TOLEDO, Appellee,

v.

BERNARD ROSS FAMILY LIMITED PARTNERSHIP et al., Appellant.

[Cite as *Toledo v. Bernard Ross Family Ltd. Partnership,*
165 Ohio App.3d 557, 2006-Ohio-117.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–04–1334 and L–05–1032.

Decided Jan. 13, 2006.

Barbara E. Herring, Director of Law, Roger Paul Klee, Peter R. Casey III, and Patrick J. Downey, for appellee.

Marvin A. Robon, Gregory R. Elder, and R. Ethan Davis, for appellant.

HANDWORK, Judge.

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a jury trial, held that appellant, Bernard Ross Family Limited Partnership, an Ohio limited partnership, was entitled to a total award of $133,000 in damages against the city of Toledo ("the city"), for the taking of appellant's property by eminent domain. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} On appeal, appellant raises the following assignments of error:

{¶ 3} "1. The trial court erred as a matter of law and/or abused its discretion by denying appellant's motion for the taxing of environmental and related costs to appellee, which appellant incurred in defending against a false environmental report.

{¶ 4} "2. The trial court erred as a matter of law and/or abused its discretion by allowing appellee to discuss and introduce evidence regarding settlement negotiations, including appellant's specific offers of compromise.

{¶ 5} "3. The trial court erred as a matter of law and/or abused its discretion by allowing appellee to discuss and introduce evidence regarding appellant being wealthy business owners who owned numerous Midas Muffler shops.

{¶ 6} "4. The trial court erred as a matter of law and/or abused its discretion in denying appellant's right to a trial by jury on the issue of compensation within twenty (20) days of the filing of their answer to the appropriation complaint as required by statute.

{¶ 7} "5. The trial court erred as a matter of law and/or abused its discretion by allowing the jury to consider evidence of the post take use of the residue in their valuation of the residue of the real property.

{¶ 8} "6. The trial court erred as a matter of law and/or abused its discretion by allowing the jury to decide the law, when it instructed the jury as to the date of take, and directed the jury to decide which Toledo Municipal Parking Code to apply to the residue of the real property."

{¶ 9} Appellant owns property at the southeast corner of Sylvania Avenue and Secor Road. During the pendency of this action, the premises were leased to Earl Brothers Enterprises Co., d.b.a. Earl Bros. Transmission & Auto Repair ("Earl Brothers"). On June 20, 2001, the city sent a letter to appellant regarding its intention to appropriate a strip of appellant's property, approximately 1,009 square feet, along Sylvania Avenue, in order to widen the road. On July 30, 2001, the city filed a petition for appropriation in the trial court and placed $74,000 on deposit with the clerk of courts, which represented "the total appraised value of the interest in the Property right for which the City offers to confess judgment."

{¶ 10} Appellant responded that the city did not have the authority to acquire the property and that due to a reduction in the parking spaces available on the property, the appropriation would render the property useless for any purpose. Because, according to appellant, the residue after the take would have no value, appellant counterclaimed for an award of damages totaling $650,000.

{¶ 11} The matter came for trial on August 30, 2004. The jury determined that the total value of the property prior to the take was $428,000, and $295,000 after the take, thereby entitling appellant to $133,000 in damages. Additionally, the jury's interrogatories indicated that the verdict took into consideration the continued productive use and enjoyment of the property by Earl Brothers after the appropriation and roadway improvements. The jury also responded that it took into consideration whether there was sufficient customer parking after the take to permit the property to be productively used and found that there was sufficient parking. Nevertheless, the jury determined that the loss of customer parking affected the value of the property and, therefore, attributed $111,860 of the $133,000 award as compensation for the decreased value of the residue caused

by the loss in customer parking. In making its determination regarding whether there was sufficient parking remaining, the jury indicated that it found that the 1959 and 1986 versions of the city of Toledo Parking Code applied to the residue. It is from this judgment that appellant appeals.

{¶ 12} In its first assignment of error, appellant argues that the trial court erred as a matter of law and/or abused its discretion by denying appellant's motion for the taxing of costs to the city. The city tested the property for environmental contaminates and concluded that the property was contaminated. In order to disprove this report, which appellant alleges was false, appellant incurred expert and attorney fees. Appellant argues that it was entitled to have these costs paid by the city pursuant to R.C. 163.62 because the city abandoned its environmental claim by not raising it at trial. Alternatively, appellant argues that it is entitled to the costs pursuant to R.C. 2323.51, because the city's environmental claim was frivolous. We disagree.

{¶ 13} In 1995, during a sewer excavation, the city encountered "petroleum free product and soil contamination" on the outside of a sewer line in front of Earl Brothers. During a site examination at Earl Brothers, representatives from the Bureau of Underground Storage Tank Regulations ("BUSTR") and the Ohio Environmental Protection Agency ("EPA") determined that there was an underground tank on the property that needed to be removed or abandoned. As of May 9, 2002, no closure assessment report regarding the removal or abandonment of the underground storage tank had been filed with BUSTR.

{¶ 14} Although the city knew of the potential contamination of the property, it did not pursue environmental testing on the premises until February 2002. R.C. 163.03 allows an agency, upon appropriate notice, prior to or *subsequent to* the filing of a petition pursuant to R.C. 163.05, to enter upon any lands, waters, and premises for the purpose of making such surveys, soundings, drillings, appraisals, and examinations as are necessary or proper for the purpose of the agency under sections 163.01 to 163.22, inclusive. Appellant, however, contested the city's ability to enter the premises to conduct environmental testing, asserting that such an entry would constitute a trespass. Therefore, the city filed its emergency motion to conduct a Phase II Environment Study on October 3, 2002.

{¶ 15} The city explained in its motion that because appellant maintained that the residue was completely useless after the take, appellant put the value of the entire parcel into issue. Thus, the fair market value of the entire parcel, before and after the taking, had to be determined. This value obviously would be affected by the environmental condition of the property, because the presence of hazardous substances could significantly affect its value. The city argued that "if the contamination is of sufficient severity, the parcel may be worthless as to any

third party." Ultimately, the city was permitted to conduct the environmental testing.

{¶ 16} After two rounds of drilling and soil sampling, the city's expert determined that the property was contaminated with Benzene. Appellant, however, hired its own expert. Appellant argued that because of the location of the property, the city's expert had incorrectly used a residential standard in determining that the property was contaminated. According to appellant's expert, a commercial property standard for contaminates should have been used. Under the commercial property standard of measurement, the property was not contaminated.

{¶ 17} On August 23, 2004, appellant filed a motion to exclude evidence regarding environmental testing. On August 26, 2004, the city responded. The city recognized that there was a difference in opinion regarding the level of contamination on the premises; however, it argued that the value of the property would nevertheless be negatively affected by the presence of *any* contaminate due to a "stigma effect." The city asserted that the "stigma effect" of contaminated property statistically resulted in greater difficulty in marketing such property and reduced the value of such property, as viewed by prospective purchasers. Despite this stigma effect, the city indicated to the trial court that it had elected not to "interject this element into the trial for strategic reasons."

{¶ 18} The matter was again brought to the trial court's attention on the day of trial, August 30, 2004. The city again indicated that the experts disagreed whether BUSTR standards or EPA standards should be applied, but, in any event, the city did not intend to raise environmental issues at trial, and stated:

{¶ 19} "[O]ur experts would say that the property is a Brownfield site, it's contaminated, but we have no—we have made a strategic decision that when you get done with the he said/she said argument, that it would, more likely than not, confuse the jury and not add to reaching a decision as to fair and just compensation."

{¶ 20} No environmental issue was raised at trial. Following trial, on September 29, 2004, appellant filed a motion for taxing of environmental expert and related costs to the city. Appellant argued that it should be awarded costs pursuant to R.C. 2323.51, because the city's pursuit of an environmental claim was frivolous and, alternatively, it was entitled to these costs pursuant to R.C. 163.62, because the city abandoned its environmental claim against appellant. The trial court denied appellant's motion on the basis of R.C. 163.62, noting that appellant "failed to cite any authority to support its theory that each and every separate sub-issue within an eminent domain proceeding is a separate proceeding." The trial court additionally held that appellant was not entitled to reimbursement pursuant to R.C. 163.61, 2323.51 or Civ.R. 54(D).

{¶ 21} "Generally, an unsuccessful litigant is not liable for the litigation expenses, including attorney fees, of its adversary in the absence of a statute providing for their allowance. (Citations omitted.)" *Ohio Edison Co. v. Franklin Paper Co., Inc.* (1985), 18 Ohio St.3d 15, 16, 18 OBR 13, 479 N.E.2d 843. However, R.C. 163.62 and 163.21 provide that if appropriation proceedings are abandoned, the property owner is entitled to certain damages. Because appellant and Earl Brothers were not displaced or subject to displacement by condemnation, we find that R.C. 163.62 does not apply in this case. See *Willoughby v. Slyman* (Sept. 13, 1996), Lake App. No. 94–L–142, 1996 WL 535287. Additionally, because the city actually took possession of the property, appellant would not be entitled to recover its costs pursuant to R.C. 163.21.

{¶ 22} Assuming arguendo that R.C. 163.62 would apply to appellant's situation, we nevertheless find that appellant is not entitled to recover its costs for expert and attorney fees. Although it is true that the city did not raise any environmental issue at trial, we disagree with appellant that this constitutes abandonment of the appropriation "proceedings," as required by R.C. 163.62.[1]

{¶ 23} As this court has previously held, "Proper compensation for property partially appropriated by the state includes both the value of the property taken and any consequential damages to that portion of the land which remains in the private owner's hands following the taking. Damages to the remainder (known as the residue) are calculated by deducting the fair market value of the property after the taking from the fair market value of the property prior to the taking." (Citations omitted.) *Lucas Cty. Bd. of Commrs. v. Mockensturm* (1997), 119 Ohio App.3d 223, 226–227, 695 N.E.2d 15. "In determining the fair market value of the property before and after the appropriation, 'every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered.'" *Wray v. Stvartak* (1997), 121 Ohio App.3d 462, 471, 700 N.E.2d 347, quoting *Sowers v. Schaeffer* (1951), 155 Ohio St. 454, 459, 44 O.O. 419, 99 N.E.2d 313.

---

1. {¶ a} R.C. 163.62 states:

{¶ b} "(A) The court having jurisdiction of a proceeding instituted by a state agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceeding, if either:

{¶ c} "(1) The final judgment is that the agency cannot acquire the real property by condemnation; or

{¶ d} "(2) The proceeding is abandoned by the state agency."

{¶ 24} Appellant sought damages representing the total value of the property because, according to appellant, the loss of parking spaces rendered the property useless. In determining the fair market value of the entire parcel, we find that the city was permitted to gather information concerning every element that would affect the fair market value of the property. See id. Clearly, evidence of contamination would affect the value of the property.

{¶ 25} By not asserting that the property was contaminated at trial, at best, we find that the city abandoned an argument concerning an additional element that could have been considered in assessing the property's value. R.C. 163.62, however, does not provide for recovery of costs on appellant's behalf for such a situation. Only if the city "cannot acquire the real property by condemnation" or the proceeding was abandoned would appellant be entitled to recover its costs. We find that the city did not abandon the appropriation proceeding it filed against appellant. To the contrary, the city appropriated the property from appellant and Sylvania Avenue was widened.

{¶ 26} With respect to appellant's claim that the city's actions were frivolous, appellant asserts that the city should not have been able to test the property beyond 20 days from the filing of the appropriation petition, that the environmental testing was an afterthought and done to harass appellant into a settlement, that the city's results were incorrect, and that it was unprecedented to pursue environmental testing when the only issue was fair market value. We disagree with appellant's arguments.

{¶ 27} Pursuant to R.C. 2323.51(A)(2), the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action, which does any of the following is considered frivolous conduct: (i) "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation"; (ii) "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law"; (iii) "consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"; or (iv) "consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."

{¶ 28} Upon review of the record, we find that appellant failed to establish that the city's actions served merely to harass or maliciously injure appellant, that the testing was unnecessary, or that the city's allegations of contamination had no evidentiary support. Clearly, environmental contamination, in any amount, could have a negative impact on the value of the property for a potential purchaser. Thus, establishing whether the property was contaminated was a relevant issue with respect to determining its fair market value. The city was therefore justified in pursuing an environmental contamination investigation in an effort to determine the fair market value of the property.

{¶ 29} Additionally, we find that there was ample evidence upon which the city relied in pursuing an environmental contamination investigation. As discussed above, there was evidence that contaminants were found on or adjacent to the property in 1995; that the property was known to have been used as a gas station or automobile repair facility since the 1950s; that an underground tank was present on the property; and that, as of May 2002, no closure report had been filed with respect to the underground storage tank. The fact that appellant's expert opined that the city was incorrect, and the property was not contaminated, does not negate the fact that the city had sufficient evidence upon which to proceed with its testing.

{¶ 30} We further find that the city's actions in testing the property were timely, did not serve to cause unnecessary delay, and did not needlessly increase the cost of litigation. Pursuant to R.C. 163.03, the city was entitled to pursue environmental testing before or after the filing of the petition. At the time the city decided to investigate the possibility of environmental contamination, the case was still in the discovery process and was proceeding before the trial court. We find that the city's delay in expending resources to test the property, until after settlement negotiations had failed, was economically prudent. By engaging in environmental testing too early, the city could have unduly chilled settlement negotiations and, had the case settled, wasted resources.

{¶ 31} Appellant, however, argues that no testing should have been allowed because the 20–day time period for trial, as set forth in R.C. 163.09, had already expired by the time the city began its environmental investigation. We find that appellant failed to pursue its rights to an immediate hearing, as provided for by R.C. 163.09, by not raising the issue before the trial court and by not pursuing a mandamus action. We therefore find that appellant waived its right on appeal to raise the issue of the trial court's noncompliance with R.C. 163.09. See *Ohio River Pipe Line, L.L.C. v. Henley* (2001), 144 Ohio App.3d 703, 707, 761 N.E.2d 640.

{¶ 32} Accordingly, even though the city did not pursue its environmental contamination position at trial, we find that appellant was not statutorily entitled

to recover expert and attorney fees from the city for costs associated with generating its own environmental report. Appellant's assertion that it was owed the full value of the property called into issue any element that could affect the fair market value of the entire parcel, including environmental contamination. For the reasons stated above, we find that the city's actions in investigating potential environmental contamination was not frivolous. Appellant's first assignment of error is therefore found not well taken.

{¶ 33} In its second and third assignments of error, appellant argues that the trial court erred as a matter of law and/or abused its discretion by allowing the city to discuss and introduce evidence regarding settlement negotiations, including appellant's specific offers of compromise, and to present evidence that appellant was comprised of wealthy business owners who owned numerous Midas Muffler shops. Appellant argues that the evidence was inadmissible because it was not relevant or probative, was prejudicial, and confused and misled the jury.

{¶ 34} Decisions regarding the admission or exclusion of evidence rest within the broad discretion of the trial court. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, at ¶ 20. See, also, *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164–165, 17 O.O.3d 98, 407 N.E.2d 490. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 48. "Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." *Beard* at ¶ 20, citing *O'Brien*, 63 Ohio St.2d at 164–165, 17 O.O.3d 98, 407 N.E.2d 490.

{¶ 35} With respect to presenting evidence of compromise and offers to compromise, Evid.R. 408 states:

{¶ 36} "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a

witness, [negating] a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

{¶ 37} With respect to the evidence of settlement negotiations and offers of compromise being offered at trial, appellant points to the following testimony of appellant's representative, Randy Katz, upon cross-examination by the city:

{¶ 38} "Q. Now, even before this property was taken by the City of Toledo—and everyone has agreed that the date of construction was May 22, 2002—the City was required to enter a series of negotiations with you long before the property was taken; isn't that not correct?

{¶ 39} "A. Prior to that, I don't remember exactly the date. I don't remember how long that would have been.

{¶ 40} "Q. Do you remember having discussions with the representative of the City to discuss their offer of compensation?

{¶ 41} "Mr. Robon: Objection, Your Honor.

{¶ 42} "The Court: What's your objection?

{¶ 43} "Mr. Robon: If he's getting into offer and compromise on settling the case—

{¶ 44} "Mr. Klee: No. The City is required to negotiate—under 163.03, the City has to make an offer, has to engage in good faith negotiations as a condition precedent to starting an eminent domain action. What I'm going to establish is that his first demand was $650,000, and that's completely fair. It's not an offer in settlement. It shows right from the get-go, from our standpoint—

{¶ 45} "The Court: I'm going to allow the question.

{¶ 46} "Mr. Robon: Show an objection.

{¶ 47} "A. I remember having a discussion with an engineering company that I was understanding was hired by the City to discuss that.  * * *

{¶ 48} "Q. And you do remember, however, that in response to the City's offer, which is consistent with Mr. Upton's appraisal, that your counterproposal was $650,000 at that time?

{¶ 49} "A. You know, I don't remember exactly what it was at that time, and I don't remember at what point in time. I don't remember exactly.

{¶ 50} "Q. Now, when you filed—when your attorney, on your behalf, filed an answer to the appropriation complaint, it contained in that a prayer and complaint requesting compensation in the amount of $650,000, didn't it?

{¶ 51} "A. I don't recall.

{¶ 52} "Q. Now as the—

{¶ 53} "Mr. Klee: Your Honor, can I approach?

{¶ 54} "Mr. Klee: It's a matter of court record that they—they filed a counterclaim for $650,000 in their appropriation proceedings, which is consistent with what he demanded. And I think that we can establish that throughout these proceedings they're nothing but outrageous—

{¶ 55} "The Court: No, we're not going to get into that.

{¶ 56} "Mr. Klee: Your Honor, I think that we can—

{¶ 57} "The Court: You've already got it in the record that they wanted $650,000. What more do you want?

{¶ 58} "Mr. Klee: Fine.

{¶ 59} "Mr. Robon: Make a notation of that.

{¶ 60} "Mr. Davis: We object on the basis of Evidence Rule 408 to that entire line of questioning with respect to any offers that were previously made, any counterclaims that were made and any demand by the property owner.

{¶ 61} "Q. (By Mr. Klee) So, Mr. Katz, if the record of the pleadings that was filed in this case demonstrate it was $650,000, you would accept that to be true?

{¶ 62} "A. Yes."

{¶ 63} Appellant argues that the city offered evidence regarding offers of compromise in an effort to establish the invalidity of appellant's claimed amount of recovery. Appellant asserts that evidence regarding settlement negotiations was not admissible, as the city argued, to establish that it had met its obligation to negotiate in good faith as a condition precedent to starting eminent domain proceedings because appellant never claimed that the city acted in bad faith. Appellant claims that reference to the settlement negotiations was prejudicial because it portrayed appellant as being comprised of wealthy, greedy businessmen.

{¶ 64} Evid.R. 408 prohibits introduction of evidence regarding settlement or compromise that is offered "to prove liability for or invalidity of the claim or its amount." We find that the above testimony does neither. Clearly, appellant was entitled to recover from the city. With respect to the amount owed appellant, volumes of testimony were presented by experts on both sides regarding the value of appellant's claim. As stated by appellant's counsel during opening remarks, appellant was seeking a recovery in the "$400,000 range." The above testimony by Katz does nothing to prove the invalidity of the amount of appellant's claim at trial. If perhaps, appellant had offered to settle for an amount less than what it sought at trial, such evidence could act to invalidate appellant's claim for recovery. However, the evidence demonstrates only that

appellant sought a higher recovery at the onset of the appropriation proceedings than it could ultimately prove at trial. Moreover, because appellant prayed for $650,000 in its answer, which is one of the pleadings in the case, we find that the introduction of such evidence was permissible and that there is no showing of prejudice to appellant. See *Hocking Valley Ry. Co. v. Helber* (1915), 91 Ohio St. 231, 246, 110 N.E. 481; and *McCleese v. Glockner Chevrolet Co.* (1966), 6 Ohio App.2d 69, 71, 35 O.O.2d 165, 216 N.E.2d 389.

{¶ 65} Accordingly, we find that the testimony that appellant sought $650,000 was not prohibited pursuant to Evid.R. 408 and, as part the record, was properly admissible in this case. We therefore find that the trial court did not abuse its discretion in permitting that testimony. Appellant's second assignment of error is found not well taken.

{¶ 66} In support of appellant's argument that the city improperly portrayed appellant as wealthy and greedy, appellant directs this court's attention to the city's opening statement, wherein the city's attorney, Mr. Klee, stated:

{¶ 67} "Historically there were four gas stations located on the corner of Sylvania and Secor. One of them has been developed by the Katz family into a shopping center which is—

{¶ 68} "Mr. Robon: Objection. May we approach, your Honor.

{¶ 69} "Mr. Robon: I am going to move for a mistrial. He cannot bring up other properties that are owned by this family. That's clearly prejudicial.

{¶ 70} "The Court: It's not going to be a mistrial but—

{¶ 71} "Mr. Klee: I will—

{¶ 72} "The Court: Don't go into that again.

{¶ 73} "Mr. Klee: I understand."

{¶ 74} Appellant also directs this court's attention to the city's closing statements, wherein the city's attorney stated:

{¶ 75} "Ladies and Gentlemen, it wouldn't be an argument if I didn't argue something, and I can think when all is said and done this case can be summed up in one word: greed. Greed. Simple. Damage maximization."

{¶ 76} Additionally, appellant complains about the following questioning of appellant's principal representative, Randy Katz, by the city:

{¶ 77} "Q. Do you remember your deposition on April 8, 2004?

{¶ 78} "A. Yes. I remember giving the deposition.

{¶ 79} "Q. Do you remember I asked you, when you bought the property, what it was purchased for?

{¶ 80} "A. I don't remember that specifically.

{¶ 81} "Q. You do not remember that I asked you that question and you answered for one of your Midas Muffler Shop locations?

{¶ 82} "Mr. Robon: Can we approach the bench, your Honor?

{¶ 83} "Mr. Klee: He opened it up. I have a right to get to an examination. It's exactly what he testified to.

{¶ 84} "Mr. Robon: You didn't have to say—

{¶ 85} "Mr. Klee: He said—he says it in his own deposition.

{¶ 86} "Mr. Robon: But you didn't have to say your Midas Muffler Shop locations. We thought we agreed that that was not going to come into evidence.

{¶ 87} "Mr. Klee: He opened it up. It's his problem.

{¶ 88} "The Court: I'll allow some limited cross-examination."

{¶ 89} With respect to the city's opening statement that appellant had developed other property in the area, we find that the trial court sustained appellant's objection. Because it was sustained, the trial court properly instructed the jurors to disregard the statement and treat it as though they had never heard it. As to the city's closing statement that appellant was greedy, we find that appellant failed to object to this statement and, thereby, waived its right to object on appeal. See *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099.

{¶ 90} With respect to the city's reference to appellant's Midas Muffler shops, we agree with the city that appellant opened the door during Katz's direct examination regarding this testimony. Katz testified that the property was purchased in 1988 as an investment property, with the intention that it would be developed for use as a Starbucks, video rental store, or for some other purpose to get "the highest and best use out of it." In his deposition, however, Katz had testified that it was purchased with the intention of moving one of their existing Midas Muffler shops to that location. We find that the trial court did not err in allowing the city to cross-examine Katz on this seemingly inconsistent testimony. Accordingly, we find appellant's third assignment of error not well taken.

{¶ 91} Appellant argues in its fourth assignment of error that the trial court erred as a matter of law and/or abused its discretion in denying appellant's right to a trial by jury on the issue of compensation within 20 days of the filing of its answer to the appropriation complaint, as required by R.C. 163.09. Appellant asserts that the delay in bringing the matter to trial unconstitutionally deprived appellant of its property without just compensation for an indefinite period of time. We disagree.

{¶ 92} First, in accordance with R.C. 163.06(A), the city placed funds on deposit for this appropriation. R.C. 163.06(C) provides that appellant could have applied to withdraw the funds at any time. Such a withdrawal would "in no way interfere with the action except that the sum so withdrawn shall be deducted from the sum of the final verdict or award." Appellant chose not to acquire the funds on deposit. Second, appellant failed to assert its right to have the matter heard pursuant to the time guidelines set forth in R.C. 163.09. Having failed to pursue its right, we find that appellant waived its right to raise this issue on appeal. See *Ohio River*, 144 Ohio App.3d at 707, 761 N.E.2d 640. Third, although not in conformity with the time guidelines of R.C. 163.09, we find that all necessary issues were determined by the trial court and, thus, find no prejudicial effect. Appellant's fourth assignment of error is therefore found not well taken.

{¶ 93} Appellant argues in its fifth assignment of error that the trial court erred as a matter of law and/or abused its discretion by allowing the jury to consider evidence of the post-take use of the property in determining a value for the residue. Appellant argues that the use of the property after the date of the take is wholly irrelevant, since the measure of compensation is the difference between the value of the land immediately before and the value of the land at the time of the take. In particular, appellant asserts that the trial court erred by allowing the city to introduce evidence concerning the post-take use of the property, the leasing arrangement, and the rent received by appellant from Earl Brothers. Appellant argues that loss of income and future profits cannot be used as a means to measure the fair market value of appropriated property.

{¶ 94} Appellant is correct that when valuing property for eminent domain purposes, Ohio courts do not consider individual leases. See *Proctor v. CNL Income Fund IX, Ltd.*, 6th Dist. No. WD–04–027, 2005-Ohio-1223, 2005 WL 635031, ¶ 27, citing *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 23, 523 N.E.2d 826. Although the value of a leasehold interest is incompetent for determining the value of appropriated property, evidence as to the reasonable rental value of such real estate *may* be admissible in determining the fair market value of the whole property. *Queen City Realty Co. v. Linzell* (1957), 166 Ohio St. 249, 2 O.O.2d 82, 142 N.E.2d 219, paragraphs one and two of the syllabus. See, also, *Sowers*, 155 Ohio St. 454, 44 O.O. 419, 99 N.E.2d 313.

{¶ 95} In *Sowers*, the property involved was developed for recreation, summer home, and permanent home purposes. The Ohio Supreme Court held, in that instance, that in ascertaining the property's value as a whole, it was proper to admit testimony as to the value of the individual structures, buildings, and improvements, the rental value thereof, and the nature of the businesses that could suitably be carried thereon that may either enhance or lessen the proper-

ty's value. *Sowers* at paragraph two of the syllabus. However, the court in *Sowers* noted:

{¶ 96} "As a rule, profits from commercial businesses on premises can not be shown in an appropriation proceeding for the reason that such profits are too speculative, depending as they do upon the acumen and skill of the one who carries on the business, but, assuredly, it is proper to show the kinds of businesses to which the premises are adaptable." Id., 155 Ohio St. at 459, 44 O.O. 419, 99 N.E.2d 313.

{¶ 97} In this case, the jury's interrogatories indicated that the verdict took into consideration the continued productive use and enjoyment of the property by Earl Brothers after the appropriation and roadway improvements. We find that using evidence of a leasehold interest in this manner was appropriate. See *Linzell* and *Sowers*, supra. The fact that Earl Brothers continued to lease the premises at the same rate indicated that the property still had a market rental value. There is no indication, however, that the calculation of the fair market value included the rental income from Earl Brothers.

{¶ 98} Accordingly, we find that the trial court did not error in allowing testimony concerning the post-take use of the property. Appellant's fifth assignment of error is therefore found not well taken.

{¶ 99} In its sixth assignment of error, appellant argues that the trial court erred as a matter of law by allowing the jury to decide the law regarding which Toledo Municipal Parking Code applied to the residue of the real property. The city responds that appellant invited any error by asserting that the number of parking spaces that could be sustained by the property was a jury issue.

{¶ 100} Appellant called into question which version of the Toledo Municipal Code ("TMC") applied by arguing that, pursuant to the 2004 TMC, the property was not in compliance with current parking regulations because the take on March 22, 2002, altered the property. Appellant additionally argued that if the property's use changed to accommodate subsequent tenants, the property would have to be brought into compliance with the 2004 TMC. Appellant asserted that in order to bring the property into compliance, more money than the property was worth would have to be spent. The city, on the other hand, argued that the property was only required to comply with the parking regulations as they existed in the 1959 TMC, and that the current parking was compliant with that code.

{¶ 101} The property was rezoned in 1962 as C–3. At that time, the 1959 TMC governed the number of parking spaces required on the property. In 1986, TMC was amended with additional off-street parking requirements. TMC 1165.01(a), effective August 1986, stated that "there shall be provided at the time any

building is erected or structurally altered, except as otherwise provided in this section, off-street parking spaces in accordance with the following requirements * * *." TMC 1165.03(b), however, also stated as follows:

{¶ 102} "Every owner of land shall provide and continue to provide parking spaces in compliance with the Zoning Code provisions in effect at the time such particular use was approved or building permits were issued."

{¶ 103} The property had been continually used since the 1950s as a gas station and/or an automobile repair facility. The building on the property was erected prior to 1986, and had not been structurally altered after 1986. Accordingly, pursuant to TMC 1165.03(b),[2] because the use of the property had not changed at the time of the take, or at the time of trial, for that matter, we find that the property owner was only required to continue to comply with the code provisions contained in the 1959 TMC.

{¶ 104} We agree with appellant that the issue of what version of the code applied to the property was a matter of law for the trial court to determine. We, however, also agree with the city that appellant invited the error by arguing that the 2004 TMC applied in this case. Nevertheless, we find that the error was harmless because the jury correctly applied both the 1959 and 1986 versions of the TMC.

{¶ 105} The 1986 TMC applied because that was the code in effect at the time of the take. Since there had been no change in the use of the property and the structure had not been altered, we find that appellant did not have to comply with the 1986 TMC parking provisions, but, rather, only had to comply with "the Zoning Code provisions in effect at the time such particular use was approved or building permits were issued." See TMC 1165.03(b). In this case, the 1959 TMC was the "Zoning Code provisions" referred to by TMC 1165.03(b). Accordingly, the jury had to look at both the 1959 and 1986 codes to determine whether the property's parking was in compliance.

{¶ 106} We therefore find that although the trial court should have instructed the jury regarding which TMC applied in the present case, the error was harmless because the jury was not confused and, ultimately, applied the correct codes. Appellant's sixth assignment of error is therefore found not well taken.

{¶ 107} The judgment of the Lucas County Court of Common Pleas is affirmed.

Judgment affirmed.

SINGER, P.J., and SKOW, J., concur.

---

2. The 2004 TMC also contains the identical section.