[Cite as *Wray v. Albi Holdings, P.L.L.*, 2021-Ohio-3920.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JERRY WRAY, DIRECTOR OHIO DEPARTMENT OF TRANSPORTATION, | : | APPEAL NO. C-200381 |
| | | TRIAL NO.  A-1802752 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ALBI HOLDINGS, P.L.L, | : | |
| and | : | |
| BUSINESS INFORMATION SOLUTIONS, INC., | : | |
| Defendants-Appellants, | : | |
| and | : | |
| DUSTY RHODES, HAMILTON COUNTY AUDITOR, | : | |
| and | : | |
| ROBERT A. GOEHRING, HAMILTON COUNTY TREASURER, | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 3, 2021

*Dave Yost,* Ohio Attorney General, and *L. Martin Cordero* and *Corinna V. Efkeman*, Assistant Attorneys General, for Plaintiff-Appellee,

*Manley Burke, L.P.A., Sean P. Callan* and *Ilana L. Linder*, for Defendants-Appellants.

**CROUSE, Judge.**

{¶1}  Defendant-appellant Albi Holdings, P.L.L., owns property in Hamilton County on which defendant-appellant Business Information Solutions (collectively referred to as "BiS") operates a commercial records storage facility. Plaintiff-appellee Ohio Department of Transportation ("ODOT") instituted appropriation proceedings to acquire the property, but later abandoned the appropriation. BiS sought reimbursement from ODOT for employee-retention bonuses it paid after the appropriation was abandoned.

{¶2}  The trial court held that the employee-retention bonuses were not a recoverable expense.  BiS has appealed, arguing in two assignments of error that the trial court erred by failing to properly interpret and apply R.C. 163.21 and 163.62. For the reasons discussed below, we overrule both assignments of error and affirm the judgment of the trial court.

### *Proffered Facts*

{¶3}  Because the Covid-19 pandemic caused courtrooms in Hamilton County to temporarily close, the parties agreed to allow BiS to proffer facts it expected to prove at an evidentiary hearing, in lieu of conducting a hearing. For the purpose of resolving the legal issues presented, we accept the proffered facts as true, as the trial court did.

{¶4}  Frank Albi, owner of BiS and Albi Holdings, received an email on May 22, 2014, from ODOT's real estate administrator informing him that ODOT was planning a "total take" of his property.  The email was in response to an inquiry made by Albi after he read an article in the newspaper about the reconstruction of the

Western Hills Viaduct and a portion of Interstate Highway 75. The email stated, in relevant part:

Thanks for inquiring about the project. Yes, your property will be needed and at this point it is planned to be a total take.

With the limited funds we have for this project, we have been authorized to start the appraisal process on certain priority parcels only, one of which is yours. * * * [I]t may be in your best interest to move and re-establish as soon as possible simply to keep your business operational with the least amount of down time.

{¶5}  Due to the proposed appropriation, employee retention became a primary concern for BiS because of the extensive skill and experience involved in the storing, retrieving, and safeguarding of over 200,000 boxes of records. Additionally, Albi was scheduled to retire in 2020, and the proposed appropriation caused concern among employees that Albi would retire early and sell the business.

{¶6}  In response, BiS developed a "retention policy" in order to incentivize employees to remain with the company through the appropriation proceedings. On May 1, 2017, ODOT informed BiS that it was no longer planning a "total take" and instead would only appropriate part of the property. Sometime thereafter, ODOT made a "good faith offer" of $200,000 for the partial take and the resulting damage to the residue of the property. The offer was rejected by BiS. On June 4, 2018, ODOT commenced the appropriation proceedings by filing a petition for appropriation. On November 19, 2019, ODOT abandoned the appropriation altogether.  After the abandonment, BiS paid a total of $212,990 in retention bonuses previously promised

to its employees. Pursuant to R.C. 163.21(A) and 163.62, it sought reimbursement from ODOT for the retention bonuses.

### *R.C. 163.21*

{¶7} In its first assignment of error, BiS contends that the trial court erred by failing to properly interpret and apply R.C. 163.21. Because we are interpreting whether the retention bonuses qualify as "other actual expenses," under R.C. 163.21(A), the first assignment of error turns on an issue of statutory interpretation. We review issues of statutory interpretation de novo. *435 Elm Invest., LLC v. CBD Invest. Ltd. Partnership I*, 1st Dist. Hamilton No. C-190133, 2020-Ohio-943, ¶ 8.

{¶8} R.C. 163.21 is a remedial law and should be liberally construed in order to promote its object and assist the parties in obtaining justice. *Dept. of Natural Resources v. Sellers*, 14 Ohio App.2d 132, 135, 237 N.E.2d 328 (5th Dist.1968); R.C. 1.11.

{¶9} When ODOT or a similar state agency abandons an appropriation action, R.C. 163.21(A) requires that the court enter judgment against ODOT for certain expenses incurred by the property owner. The statute reads in pertinent part:

(2) In all cases of abandonment as described in division (A)(1) of this section, the court shall enter a judgment against the agency for costs, including jury fees, and shall enter a judgment in favor of each affected owner, in amounts that the court considers to be just, for each of the following that the owner incurred:

(a) Witness fees, including expert witness fees;

(b) Attorney's fees;

(c) Other actual expenses.

R.C. 163.21(A).

{¶10} The parties agreed on all categories of expenses except the employee-retention bonuses. The trial court stated that the "single issue" before it was: "Under R.C. 163.21(A)(2)(c), are retention bonuses paid to employees 'other actual expenses?' " Relying on *Columbus v. Triplett*, 127 Ohio App.3d 434, 713 N.E.2d 68 (10th Dist.1998), the trial court determined that "other actual expenses" were limited to "expenses incurred that are *reasonably necessary for the presentation of the case*." (Emphasis added.) It found that the bonus expenses were "not compensable under the statute." It held,

> Although Defendants paid the bonuses to retain employees during a move that ultimately did not happen, Defendants' decision to pay employee retention bonuses was a business decision. While it is clear that Defendants were placed in a bad situation, this Court finds that the statute is limited to 'other expenses' that are *necessary*.[1]

(Emphasis added.)

{¶11} BiS's primary contention is that the trial court applied the wrong standard in interpreting R.C. 163.21 by requiring that the expenses be "necessary" for the presentation of the case.

{¶12} We hold that the trial court properly interpreted R.C. 163.21. First, its interpretation is consistent with two canons of statutory interpretation.

---

[1] The concurrence states, "The trial court determined that it would be unjust to require ODOT to reimburse BiS for the severance payments that it incurred as a result of a business decision to retain employees." However, the trial court never used the word "just" in its judgment entry. The court did not invoke its discretion to determine amounts that it believed to be just. Rather, it held that the retention bonuses were not recoverable under the statute because they were not "other expenses that are necessary."

{¶13} According to the canon of noscitur a sociis,[2] the meaning of an unclear word may be derived from the meaning of accompanying words. *Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 43. Witness fees, including expert witness fees, and attorney fees are expenses necessary for the presentation of the case. The rule of noscitur a sociis suggests that "other actual expenses" would also be referring to expenses necessary for the presentation of the case.

{¶14} Moreover, the canon of ejusdem generis[3] states that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

{¶15} For example, *Adams* involved 9 U.S.C. 1, which excludes from the Federal Arbitration Act "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id.* at 109. The Court was asked to interpret whether the residual clause "any other class of workers engaged in foreign or interstate commerce" referred only to transportation workers, or included workers such as Adams, who worked at an electronics store. *Id.* The Court held, pursuant to the maxim of ejusdem generis, the residual clause "should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of

---

[2] Translated from Latin it means "it is known from its associates." *Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 43.
[3] Translated from Latin it means "of the same kind or species." *State v. Aspell*, 10 Ohio St.2d 1, 4, 225 N.E.2d 226 (1967).

workers which are recited just before it." *Id.* at 115. Therefore, the residual clause applied only to transportation workers, not all workers.

{¶16} The present case illustrates a textbook example of when the canon of ejusdem generis should be applied. The residual clause "other actual expenses" should be read to give effect to "witness fees" and "attorney fees," and should itself be controlled and defined by those categories of expenses. Witness and attorney fees both relate to the case's legal proceedings, i.e., the determination of, and presentation of, the value of the property. *See In re Appropriation of Easement for Hwy. Purposes (Preston v. Weiler),* 175 Ohio St. 107, 191 N.E.2d 832 (1963), paragraph one of the syllabus (in cases of appropriation for public highways, roads, and bridges, the sole issue for the fact finder is to determine the amount of compensation and damages owed to the landowner); R.C. 5519.01.

{¶17} Other appellate districts have limited "other actual expenses" to "trial preparation expenses" or "expenses incurred that are reasonably necessary for the presentation of the case." *Sellers,* 14 Ohio App.2d at 135, 237 N.E.2d 328; *Triplett,* 127 Ohio App.3d at 439, 713 N.E.2d 68; *Village of Wayne Lakes v. Midwest United Indus., Inc.,* 2d Dist. Darke No. 1275, 1991 WL 96310, *2 (May 24, 1991).

{¶18} R.C. 163.21 was enacted to revise and consolidate several separate appropriation statutes. *Sellers* at 135. Although R.C. 163.21(A)(2)(c) was not at issue in *Sellers,* the case still offers guidance regarding the types of expenses recoverable as "other actual expenses." Before repeal, R.C. 2709.24 concerned the dismissal (abandonment) of appropriation actions by private corporations. It contained "practically the same conditions as to allowing and ordering *trial preparation expenses* as are now contained in Section 163.21 of the Revised Code." (Emphasis

added.) *Id.* The purpose of R.C. 2709.24 was "to require the public service corporation to reimburse property owners for costs and expenses incurred *in the conduct of the proceeding* where it is voluntarily discontinued." (Emphasis added.) *Id.* at 140. "A liberal construction of the newer remedial law, Section 163.21, Revised Code, would dictate that the owners of the property sought to be appropriated have now been provided with a remedy that would enable them to recover for their *trial preparation expenses.*" (Emphasis added.) *Id.* at 135-136.

{¶19} In *Triplett* at 439, the case relied on by the trial court in this case, the Tenth District limited other actual expenses to those expenses "reasonably necessary for the presentation of the case." It held that appraiser expenses, if proven by Triplett, were recoverable. *Id.* But "because neither an architect's opinion nor an engineer's opinion is relevant to the value of property, there is no way" that Triplett could recover for the expenses of the architect and engineer. *Id.* Furthermore, Triplett and his family members were not entitled to any fees or expenses for nonprofessional service in relation to the case. *Id.*

{¶20} In *Village of Wayne Lakes*, 2d Dist. Darke No. 1275, 1991 WL 96310, at *2, the appellant-village argued that the trial court applied the wrong standard when it determined that fees and expenses under R.C. 163.21 must be "necessary for the preparation of the case." The Second District rejected that argument. "In arriving at a 'just' determination of expenses to be charged an appropriating agency after abandonment, the court may weigh the reasonable and necessary nature of an expense claimed." *Id.*

{¶21} Accordingly, we hold that the trial court did not err in holding that the retention bonuses were not recoverable under R.C. 163.21. The first assignment of error is overruled.

### R.C. 163.62

{¶22} In its second assignment of error, BiS contends that the trial court erred by refusing to apply R.C. 163.62.

{¶23} R.C. 163.62(A) provides,

The court having jurisdiction of a proceeding instituted by a state agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for the owner's reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees actually incurred because of the condemnation proceeding, as provided in division (G) of section 163.09 or division (A) or (C) of section 163.21 of the Revised Code, as applicable.

{¶24} Condemnation refers to the appropriation of property by the exercise of the power of eminent domain, and courts use "condemn" and "appropriate" interchangeably. *Carroll Weir Funeral Home, Inc. v. Miller, In re Appropriation of Easement for Hwy. Purposes*, 2 Ohio St.2d 189, 193, 207 N.E.2d 747 (1965).

{¶25} ODOT argues that R.C. 163.62 only applies to "displaced persons," defined by R.C. 163.51(E)(1) as "any person who moves from real property, or moves his personal property from real property, as a direct result of a written notice of intent to acquire or the acquisition of such real property, in whole or in part, under a program or project undertaken by a state agency * * *." The trial court agreed and

found that R.C. 163.62 does not apply because BiS "did not move from the Property or move personal property to another location."

{¶26} R.C. 163.62 falls under the heading "Relocation Assistance" in the Revised Code. The "Relocation Assistance" sections (R.C. 163.51 to 163.62) apply to relocating and compensating landowners who have been forced to move due to an appropriation of their property.

{¶27} Other appellate districts have held that R.C. 163.62 only applies to displaced persons. "R.C. 163.62 and 163.21 provide that if appropriation proceedings are abandoned, the property owner is entitled to certain damages. Because appellant and Earl Brothers were not displaced or subject to displacement by condemnation, we find that R.C. 163.62 does not apply in this case." *Toledo v. Bernard Ross Family Ltd. Partnership,* 165 Ohio App.3d 557, 2006-Ohio-117, 847 N.E.2d 466, ¶ 21 (6th Dist.), citing *Willoughby v. Slyman,* 11th Dist. Lake No. 94–L–142, 1996 WL 535287, *3 (Sept. 13, 1996) ("R.C. 163.62 is simply not applicable to the present case since, pursuant to R.C. 163.51 et seq., it only applies to 'displaced persons.' ").

{¶28} However, BiS contends that, although R.C. 163.59 to 163.62 are grouped with sections concerning displacement, they are not limited to displaced persons. The terms "displaced person" and "displacing authority," despite being defined in R.C. 163.51 and appearing in other sections of the chapter, do not appear in R.C. 163.62. Instead, R.C. 163.62 refers to the "owner," not the "displaced person," and authorizes repayment of expenses incurred because of the "condemnation proceedings," not "displacement" or "relocation."

{¶29} We need not decide the issue here because, even if R.C. 163.62 applied to nondisplaced persons as BiS contends, the retention-bonus expenses are not recoverable under that section.

{¶30} The General Assembly's usage of "including" in R.C. 163.62(A) means that recoverable expenses are not limited to attorney, appraisal, and engineering fees. But, according to the canon of noscitur a sociis, the specified list of recoverable expenses bears on the types of other expenses that may be recoverable. Whereas attorney, appraisal, and engineering expenses relate to the condemnation proceeding and the valuation of the property, the retention bonuses relate to the conduct of the business. As the trial court stated, the bonuses were a business decision.

{¶31} The Ohio Administrative Code supports this interpretation. Ohio Adm.Code 5501:2-5-01 to 5501:2-5-06 were enacted to "amplify sections 163.51 to 163.63 of the Revised Code * * *." Ohio Adm.Code 5501:2-5-06 provides additional guidance as to what types of expenses are recoverable. According to section (G), where there has been a final judgment against the agency or the agency has abandoned the appropriation, the owner is entitled to "*certain litigation expenses,*" such as "attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding." (Emphasis added.)

{¶32} Accordingly, we hold that the employee-retention bonuses are not recoverable under R.C. 163.62. The second assignment of error is overruled.

### Conclusion

{¶33} Because the employee-retention bonuses do not qualify as recoverable expenses under either R.C. 163.21 or 163.62, both assignments of error are overruled and the judgment of the trial court is affirmed.

11

Judgment affirmed.

**WINKLER, J.,** concurs.
**ZAYAS, P.J.,** concurs separately.

**ZAYAS, P.J.,** concurring separately.

{¶34} I agree with the majority that BiS is not entitled to recover the employee-severance payments under R.C. 163.21 or 163.62. But I disagree with the majority that we must resort to statutory interpretation of R.C. 163.21 to reach that conclusion. Although BiS requests that we employ a de novo review, arguing that the trial court added the word "necessary" to "other actual expenses," I find that the court propely exercised its discretion in determining a just award, and we should review that determination for an abuse of discretion. *Village of Wayne Lakes*, 2d Dist. Darke No. 1275, 1991 WL 96310, at *2.

{¶35} BiS's proffer that it incurred an employee bonus expense of $212,900.46 in response to the potential appropriation is not disputed. The trial court's finding that the employee bonuses were actually business expenses is also undisputed. The trial court determined that payment of the employee-retention bonuses was not necessary and prevented recovery. In essence, the court determined that it would not be just to enter a judgment against ODOT for BiS's business expenses. Thus, the issue in this case is whether the trial court abused its discretion in determining that it was unjust for BiS to recover its business expenses.

{¶36} Under R.C. 163.21(A)(2), the trial court "shall enter a judgment in favor of each affected owner, in amounts that the court considers to be just." Accordingly, the trial court has broad discretion to determine a just amount. "In arriving at a 'just' determination of expenses to be charged an appropriating agency after abandonment, the court may weigh the reasonable and necessary nature of an

12

expense claimed." *Village of Wayne Lakes* at *2. Absent a showing of an abuse of discretion on the part of the trial court, we will not disturb its findings. *Id.* An abuse of discretion connotes the trial court acted in an arbitrary, unreasonable, or unconscionable manner. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶37} Here BiS contested the value of the property that ODOT wished to acquire, prompting ODOT to file its petition in June 2018. In defending against the appropriation, BiS sought to establish that ODOT failed to offer fair market value for the property. Once ODOT abandoned the appropriation, the parties agreed that BiS was entitled to costs and expenses in the amount of $125,000 for attorney's fees and expenses, expert witness fees, appraisal costs, and engineering fees expended by BiS to establish the value of the property. BiS also sought an award of $212,900.46 for the bonus payments it paid to its employees. The trial court found "that the statute is limited to other expenses that are necessary. While retention bonuses may have kept employees in place, bonuses were not something that Defendants had to offer employees."

{¶38} Prior to ODOT's interest in the property, the owner of BiS had announced to his employees that he intended to retire in 2020. When BiS learned of the future rebuild of Interstate 75, it contacted ODOT to determine if its property would be affected by the project. In May 2014, ODOT informally responded via email that it anticipated the entire BiS property would be necessary. However, ODOT did not initiate an appropriation action at that time.

{¶39} After receiving the email, BiS verbally offered a severance plan to incentivize employee retention. BiS told its employees that they would receive the

severance bonuses if they remained with BiS throughout the ODOT appropriation and business relocation. In December 2016, BiS adopted its verbal promise as a corporate "Severance Policy" that it posted on its bulletin board, in large part because the employees became concerned that the owner would sell the property to ODOT and retire. As the owner conceded in the proffer,

> [m]y staff began to worry I would sell the company out from under them because in BiS' Strategic Plan I had set 2020 as my retirement year. I was warned employees—especially the younger ones—might decide to bail out while they were still young enough to find new jobs. With input from my outside board of advisors, I established my 'Severance Policy.' At some point it occurred to me Chanel No. 5 is sold based on its 'fragrance' and not its 'odor,' so I switched to calling it "Retention Bonus."

At the time the policy was instituted, ODOT had not initiated an appropriation action.

{¶40} In May 2017, ODOT informed BiS via email that it would pursue a partial take. Shortly thereafter, ODOT delivered a written notice of intent and good faith offer, in compliance with R.C. 163.04 and 163.041 to acquire the property for $200,000. *See* R.C. 163.05. When the parties were unable to negotiate a price, ODOT filed its petition to acquire the property in June of 2018. After ODOT abandoned the appropriation in November 2019, BiS paid its employees the bonus payments in two installments totaling $212,900.46.

{¶41} BiS argues that it is entitled to a reimbursement of the retention payments because it incurred the obligation in response to an email from ODOT

14

contemplating a potential appropriation. ODOT argues that the bonuses were not related to the litigation, and the decision to pay the bonuses was a business decision in response to the owner's retirement.

{¶42} The trial court made a factual determination that the payment of the employee-retention bonuses was a business decision by BiS. As such, the court concluded that the bonuses were not a necessary expense related to the appropriation proceedings and denied recovery. In essence the trial court determined that it would be unjust to require ODOT to reimburse BiS for the severance payments that it incurred as a result of a business decision to retain employees. Under the statute, the trial court was entitled to limit recovery to only those expenses, actually incurred, that were reasonable and necessary. *See Village of Wayne Lakes,* 2d Dist. Darke No. 1275, 1991 WL 96310, at \*2.

{¶43} The fact that the trial court did not include the word "just" in its entry, does not change the analysis. The net effect of the majority's opinion is that a limitation on expenses is being read into the statute as a matter of law when the legislature provided that limitations of expenses are within the discretion of the trial court. Consequently, I concur separately.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.

15