OPINION *Page 2 
{¶ 1} Defendant-Appellant/Cross-Appellee Paul V. Bonetzky, D.O. ("Bonetzky") appeals from the August 22, 2007 Judgment Entry of the Court of Common Pleas of Logan County, Ohio, rendering judgment against him in the amount of $400,000 plus interest and costs. Bonetzky also appeals from the October 23, 2007 Judgment Entry denying Bonetzky's motion for a new trial or judgment notwithstanding the verdict, and the October 23, 2007 Judgment Entry denying Bonetzky's motion for set-off.
 {¶ 2} Additionally, Plaintiff-Appellee/Cross-Appellant Faye Kritzwiser ("Faye") as Administrator of the Estate of Billy Kritzwiser ("Billy"), deceased, cross-appeals from the trial court's order dismissing her survivorship claim, issued as a directed verdict from the bench during the August 2007 jury trial in this matter.
 {¶ 3} This matter involves an underlying medical malpractice action which alleges a failure to diagnose prostate cancer. In April of 2000 Billy's family physician, Dr. Cheryl Mann ordered routine blood tests which included a *Page 3 
test for the presence of prostate specific antigen ("PSA"). Review of these blood tests revealed that Billy's PSA level was elevated so Dr. Mann referred Billy to an urologist, Dr. Matthew Hasford. Dr. Hasford performed a biopsy of Billy's prostate which resulted in a diagnosis of prostate cancer. In May of 2000 Billy underwent a prostatectomy (surgical removal of the prostate). After the prostatectomy Billy's PSA levels continued to be monitored by Dr. Mann. However, on October 29, 2004 a bone scan revealed that Billy's cancer had returned.
 {¶ 4} On February 3, 2005 Billy and Faye filed a lawsuit against Drs. Mann and Hasford alleging negligence in treating Billy's prostate cancer. Specifically, Billy and Faye alleged that Drs. Mann and Hasford failed to properly monitor Billy for the recurrence of prostate cancer and the spread of the cancer before his recurrence was diagnosed — a delay of over two years. Additionally, Billy and Faye alleged that as a result of Drs. Mann and Hasford's negligent care, Billy lost his chance of survival and recovery from cancer. This case against Drs. Mann and Hasford was ultimately settled by the parties in March of 2006. Drs. Mann and Hasford are not parties to the present appeal.
 {¶ 5} During the discovery phase of the case against Drs. Mann and Hasford, Billy and Faye's attorney obtained Billy's medical records from Lima Memorial Hospital. These medical records revealed that Billy had previously *Page 4 
been treated by Dr. Bonetzky, and that in February of 1998 Bonetzky ordered a series of blood tests for Billy, including a PSA test. These medical records also revealed that the results of the 1998 PSA test indicated that Billy's PSA level was elevated.
 {¶ 6} On September 6, 2005 Billy and Faye's attorney sent Billy and Faye a letter advising as follows: "It appears Dr. Bonetzky ordered a PSA for Bill several years ago, and that the PSA was elevated. I assume Dr. Bonetzky never advised Bill that he had elevated PSA. This may have led to a delayed initial diagnosis of prostate cancer. Therefore, we need to decide whether to include Dr. Bonetzky in this civil action."
 {¶ 7} On October 31, 2005 Billy and Faye filed a lawsuit against Bonetzky in the Logan County Court of Common Pleas claiming that Bonetzky did not inform Billy and/or Faye of the elevated PSA test result obtained in February 1998 and that they did not become aware of the elevated PSA test result until 2005. Additionally, Billy and Faye alleged that the two year delay in diagnosis (between the February 1998 PSA test result and the April 2000 diagnosis of prostate cancer) made treatment more difficult, a cure less likely, and substantially increased the risk of Billy's death. On September 7, 2006 Bonetzky filed a motion for summary judgment alleging that Billy and Faye's complaint was not filed within the statute of limitations as required by Ohio Revised Code sections 2305.11(B)(1) and *Page 5 
(B)(2). On October 25, 2006 the trial court issued a Judgment Entry denying Bonetzky's motion for summary judgment
 {¶ 8} Billy died on April 19, 2007 and the court granted Faye leave to amend the complaint. On June 13, 2007 Faye filed an amended complaint as Administrator of Billy's Estate which added a wrongful death allegation and sought damages for wrongful death and survivorship.
 {¶ 9} This matter proceeded to a jury trial on August 8, 2007. During the trial the court issued a ruling from the bench wherein the court dismissed Faye's survivorship claim on statute of limitations grounds. At the close of all the evidence the jury returned a general verdict in favor of Faye in the amount of $400,000. Additionally, in response to the interrogatories submitted to the jury, the jury determined that Bonetzky failed to meet the standard of care under the circumstances of this case and that Bonetzky's failure to meet the standard of care was a proximate cause of Billy's death. On August 22, 2007 the trial court issued a Judgment Entry journalizing the jury verdict and rendering judgment in favor of Faye and against Bonetzky in the amount of $400,000 with interest plus costs.
 {¶ 10} On September 5, 2007 Bonetzky filed a motion for a new trial and judgment notwithstanding the verdict alleging that the trial court did not permit Bonetzky to submit evidence regarding the negligence of other parties or require the jury to decide what percentage of liability was attributable to those other *Page 6 
parties through the use of specific interrogatories. On September 5, 2007 Bonetzky also filed a motion for setoff seeking a setoff of the amount of the prior settlements by Drs. Mann and Hasford so as to reduce the judgment rendered by the jury verdict in the present case.
 {¶ 11} On October 23, 2007 the trial court issued a Judgment Entry denying Bonetzky's motion for a new trial and judgment notwithstanding the verdict. On this same date the trial court also issued a Judgment Entry denying Bonetzky's motion for setoff.
 {¶ 12} Bonetzky now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY AND SUBMITTING JURY INTERROGATORIES, PURSUANT TO O.R.C. 2707.23, REGARDING THE LIABILITY OF OTHERS, INCLUDING PLAINTIFF.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR SET-OFF PURSUANT TO O.R.C. 2307.28
 {¶ 13} Additionally, Faye cross-appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S SURVIVORSHIP CLAIM ON STATUTE OF LIMITATIONS GROUNDS. *Page 7 
 Assignment of Error No. 1 {¶ 14} In his first assignment of error, Bonetzky alleges that the trial court erred by not instructing the jury and not submitting jury interrogatories regarding the liability of others pursuant to Ohio Revised Code sections 2307.22 and 2307.23. Specifically, Bonetzky argues that due to the trial court's failure to instruct the jury and submit jury interrogatories on this issue, he was prejudiced and denied the opportunity to limit his potential liability.
 {¶ 15} We review a trial court's determination to submit interrogatories to the jury under an abuse of discretion standard.Freeman v. Norfolk W. Ry. Co. (1994), 69 Ohio St.3d 611, 614-615,635 N.E.2d 310. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 16} R.C. 2307.22 governs the determination of joint and several liability
and provides, in relevant part as follows:
 (A) Subject to sections 2307.23 and 2307.24 and except as provided in division (B) of section 2307.70, division (B) of section 4507.07, section 4399.02, or another section of the Revised Code that expressly establishes joint and several tort liability for specified persons, joint and several tort liability shall be determined as follows: *Page 8 
 (1) In a tort action in which the trier of fact determines that two or more persons proximately caused the same injury or loss to person or property or the same wrongful death and in which the trier of fact determines that more than fifty percent of the tortious conduct is attributable to one defendant, that defendant shall be jointly and severally liable in tort for all compensatory damages that represent economic loss.
 (2) If division (A)(1) of this section is applicable, each defendant who is determined by the trier of fact to be legally responsible for the same injury or loss to person or property or the same wrongful death and to whom fifty per cent or less of the tortious conduct is attributable shall be liable to the plaintiff only for that defendant's proportionate share of the compensatory damages that represent economic loss. The proportionate share of a defendant shall be calculated by multiplying the total amount of the economic damages awarded to the plaintiff by the percentage of tortious conduct as determined pursuant to section 2307.23 of the Revised Code that is attributable to that defendant.
 {¶ 17} R.C. 2307.23 sets forth the requirements when determining percentage of tortious conduct attributable to a party and provides as follows:
 (A) In determining the percentage of tortious conduct attributable to a party in a tort action under section 2307.22 or sections 2315.32 to 2315.36 of the Revised Code, the court in a non-jury action shall make findings of fact, and the jury in a jury action shall return a general verdict accompanied by answers to interrogatories, that shall specify all of the following:
 (1) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to the plaintiff and to each party to the tort action from whom the plaintiff seeks recovery in this action; *Page 9 
 (2) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to each person from whom the plaintiff does not seek recovery in this action.
 (B) The sum of the percentages of tortious conduct as determined pursuant to section (A) of this section shall equal one hundred percent.
 (C) For purposes of division (A)(2) of this section, it is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action. Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action.
 {¶ 18} Bonetzky alleges that R.C. 2307.23 mandates that the defendant is entitled to a determination by the trier of fact as to the percentage of liability that is attributable to other parties through the use of specific interrogatories when the issue is raised as an affirmative defense. Bonetzky claims that in his answer to Faye's amended complaint, he raised the affirmative defense that Billy was liable for his own injuries. Our review of the record reveals that Bonetzky's third affirmative defense stated that "[p]laintiff's decedent's negligence proximately caused and/or contributed to plaintiffs' claimed injuries and damages." However, we note that this affirmative defense does not address any alleged negligence of Drs. Mann and/or Hasford. *Page 10 
 {¶ 19} Bonetzky also alleges that during the August 2007 jury trial he sought to introduce evidence of negligence of others, specifically Drs. Mann and Hasford, and that he did introduce evidence that Billy himself was negligent. Accordingly, Bonetzky alleges that the trial court erred in failing to provide the jury with interrogatories to use in specifying what percentage of negligence may have been attributable to others, including Billy, pursuant to R.C. 2307.23(A). Additionally, Bonetzky maintains that the trial court's failure to instruct the jury and provide the jury with interrogatories regarding the liability of others had a material adverse effect on the character of the judicial proceedings in the present case and thus, such error is subject to this court's review under the doctrine of plain error.
 {¶ 20} The Supreme Court of Ohio has discussed the application of the plain error doctrine in civil cases, finding that, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus. "A `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would *Page 11 
have a material adverse affect on the character and public confidence in judicial proceedings." Shade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 209, 436 N.E.2d 1001.
 {¶ 21} Initially, we find that R.C. 2307.22 does not apply to the facts of the present case as R.C. 2307.22(A) applies only when "the trier of fact determines that two or more persons proximately caused the same injury or loss to person or property or the same wrongful death . . ." In the present case, Bonetzky was the sole defendant named in the lawsuit which proceeded to the August 8-10, 2007 jury trial and the jury did not determine that anyone other than Bonetzky caused Billy's wrongful death. Additionally, we note that the two lawsuits filed by the Billy and Faye were different types of actions, requesting different types and measures of damages. Specifically, we note that the lawsuit against Drs. Mann and Hasford was not a wrongful death action as it was settled prior to Billy's death. In contrast, Faye's suit against Bonetzky was only a wrongful death action. Accordingly, the facts of the case against Bonetzky do not meet the requirements set forth in R.C. 2307.22(A)(1) as the injuries allegedly caused by Drs. Mann and Hasford were not the same injury or loss allegedly caused by Bonetzky.
 {¶ 22} Our review of the record also reveals that Bonetzky failed to submit any proposed jury instructions or interrogatories to the trial court regarding the liability of others. Furthermore, our review of the record reveals that Bonetzky *Page 12 
failed to assert contributory fault as an affirmative defense and did not present any expert testimony or other evidence during the jury trial regarding contributory fault or the liability of others that the jury could have used to apportion liability to non-parties such as Drs. Mann and Hasford. As non-party conduct or the liability of others must be pleaded as an affirmative defense pursuant to R.C. 2307.23(C), and Bonetzky failed to so plead, we find that Bonetzky has waived this argument.
 {¶ 23} Based on the foregoing, we find no error, plain or otherwise, in the trial court's decision not to instruct the jury and not submitting specific jury interrogatories regarding the liability of others. Accordingly, Bonetzky's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 24} In his second assignment of error, Bonetzky alleges that the trial court erred in not granting his motion for setoff regarding the settlements entered into by Dr. Mann and Dr. Hasford. Specifically, Bonetzky alleges that the damages alleged and recovered in the settlement with Drs. Mann and Hasford are for the same loss as alleged by Billy and Faye in the instant case against him; that is, the loss of chance of recovery or cure, and therefore Bonetzky had the right to a setoff or a reduction in the judgment rendered by the jury verdict in this case.
 {¶ 25} As a preliminary matter, we note that setoff was not pleaded as a defense by Bonetzky. In its October 23, 2007 Judgment Entry Denying *Page 13 
Defendant's Motion for Setoff, the trial court cited this court's previous decision of Eulrich v. Weaver Bros. (2005),165 Ohio App.3d 313, 2005-Ohio-5891 in support of its conclusion that Bontezky "did not plead the affirmative defense of setoff or adduce any evidence to support such a defense." In citing Eulrich, the trial court specifically stated as follows:
 Civ. R. 8(C) governs the pleading of affirmative defenses and states in pertinent part, "in pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." The Ohio Supreme Court has interpreted Civ. R. 8(C) in dicta and noted, "While the word `shall' indicates the firmness of this pleading requirement, Civ. R. 8 does not state a time period within which an affirmative defense must be pleaded or the effect of failing to plead an affirmative defense. However, it is clear that some sort of concept of `waiver' is embodied in the requirement of Civ. R. 8(C) that a party `shall' raise any affirmative defenses in his answer." There are only three methods to assert an affirmative defense: a pre-pleading Civ. R. 12(B) motion to dismiss, a responsive pleading filed under Civ. R. 8(C), or by amendment pursuant to Civ. R. 15. (Citations omitted).
Eulrich (2005), 165 Ohio App.3d 313, 317.[1]
 {¶ 26} Our review of the record reveals that Bonetzky did not plead setoff as an affirmative defense in any of his responsive pleadings, nor did he otherwise *Page 14 
raise or present evidence to support such a defense during the jury trial in this matter, thus he has waived this defense. However, in the interests of justice, we will address the merits of Bonetzky's second assignment of error and his allegation that the trial court erred in not granting his motion for setoff.
 {¶ 27} R.C. 2307.28[2] sets forth the effect of a release or covenant not to sue or not to enforce judgment and provides as follows:
 When a release of a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the same injury or loss to person or property or the same wrongful death, both of the following apply:
 (A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact.
 (B) The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor. (Emphasis added). *Page 15 
 {¶ 28} In filing a motion for setoff, pursuant to the language of R.C. 2307.28 Bonetzky has the burden of proof to demonstrate that the settlement agreements executed by Drs. Mann and Hasford were "for the same injury or loss to person or property or the same wrongful death" as the matter against him that proceeded to trial in August 2007. However, our review of the record reveals that the action against Drs. Mann and Hasford concerned the delay in diagnosis and treatment of the recurrence of Billy's prostate cancer between 2002 and 2004. In contrast, Bonetzky's negligence occurred in February of 1998 when Bonetzky failed to inform Billy and Faye of Billy's elevated PSA test result. Accordingly, the negligence of Drs. Mann and Hasford caused a separate and distinct injury than the negligence of Bonetzky. Additionally, it is clear that the action against Drs. Mann and Hasford was not a wrongful death action as Faye's decedent (Billy) had not yet died at the time that case was filed and/or ultimately settled by the parties.
 {¶ 29} Based on the foregoing, we find that Bonetzky does not meet the requirements of R.C. 2307.28 and therefore we find that the trial court did not err in denying Bonetzky's motion for a setoff. Accordingly, Bonetzky's second assignment of error is overruled. *Page 16 
 Faye's Assignment of Error {¶ 30} In her sole assignment of error, Faye alleges that the trial court erred when it granted Bonetzky's motion for a directed verdict and dismissed her survivorship claim on statute of limitations grounds. Specifically, Faye alleges that the trial court erred when it determined that the "cognizable event" occurred when Billy was diagnosed with cancer in May 2000.
 {¶ 31} A motion for directed verdict must be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ. R. 50(A)(4); Petro v. Cuyahoga County Bd. of Commissioners, 8th Dist. No. 81358, 2003-Ohio-2188 citing Nickell v.Gonzalez (1985), 17 Ohio St.3d 136, 137, 477 N.E.2d 1145. The court does not engage in a weighing of the evidence or evaluate the credibility of the witnesses; rather, a motion for directed verdict tests the legal sufficiency of the evidence and, thus, presents a question of law, even though it is necessary to review and consider the evidence when deciding the motion. Bionci v. Boardman Local Schools, 7th Dist. Nos. 00CA6 and 00CA83, 2001-Ohio-3197 citing Bishop v. Munson Trans.,Inc. (1996), 109 Ohio App.3d, 573, 576; see also Malone v. Courtyard byMarriott (1996), 74 Ohio St.3d 440, 445, 659 N.E.2d 1242. Thus, the relevant inquiry is *Page 17 
whether substantial competent evidence supports the position of the party opposing the motion so that reasonable minds might reach different conclusions. Id. citing Apel v. Katz (1998), 83 Ohio St.3d 11, 19. Appellate review of a motion for directed verdict is de novo.Petro, supra at ¶ 7; Bionci, supra.
 {¶ 32} R.C. 2305.11(B)(1) provides that "an action upon a medical . . . claim shall be commenced within one year after the cause of action accrued[.]" The Ohio Supreme Court has previously determined "that a cause of action for medical malpractice accrues and the R.C. 2305.11
limitations period begins to run either (1) when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship for that condition terminates, which ever occurs later."Chelsea v. Cramer, 3rd Dist. No. 9-02-36, 2002-Ohio-5801 at ¶ 14 citing Akers v. Alonzo (1992), 65 Ohio St.3d 422, 605 N.E.2d 1, citing Oliver v. Kaiser Community Health Found. (1983),5 Ohio St.3d 111, 449 N.E.2d 438, syllabus; Frysinger v. Leech (1987),32 Ohio St.3d 38, 512 N.E.2d 337, syllabus. "A patient `discovers' or `should have discovered' his or her injury upon the happening of a `cognizable event.'" Id. citing Carpenter v. Kindig, 3rd Dist. No. 1-01-128, 2002-Ohio-1020.
 {¶ 33} A cognizable event is one "which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment, or diagnosis previously rendered to the patient and where the *Page 18 
cognizable event does or should place the patient on notice of the need to pursue his possible remedies." Allenius v. Thomas (1989),42 Ohio St.3d 131, 538 N.E.2d 93, syllabus. However, a "patient need not be aware of the full extent of the injury before there is a cognizable event." Carpenter, 2002-Ohio-1020 at ¶ 12 (citation omitted). "It is enough that some noteworthy event, the `cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment, or diagnosis has taken place."Chelsea, 2002-Ohio-5801 at ¶ 15 citing Allenius, 42 Ohio St.3d at 134,538 N.E.2d 93. These standards indicate that the determination of when a cause of action accrues and when the statue of limitations begins to run involves an analysis of the facts on a case-by-case basis. Id.
referencing Shadler v. Purdy (1989), 64 Ohio App.3d 98, 103,580 N.E.2d 822.
 {¶ 34} Additionally, constructive knowledge of facts, rather thanactual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. Flowers v.Walker (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284. (Emphasis in original). A plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations. Id. citing Allenius, supra, 42 Ohio St.3d at 133-134. Rather, the "cognizable event" itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies. Id. *Page 19 
 {¶ 35} During the jury trial in the present case, the Kritzwisers presented the testimony of Dr. Bonetzky who testified that he has been a primary care physician for over 40 years and that Billy had been his patient. Bonetzky testified that he ordered a CBC (complete blood count) and a PSA test for Billy in January 1998. Bonetzky testified that he ordered the PSA test based upon Billy's age and because Billy was a relatively new patient. Bonetzky also testified that a prostate exam indicated that Billy had some swelling in his prostate. Bonetzky testified that the test results indicated that Billy had a PSA of 13.19. Bonetzky testified that in February 1998 he advised Billy that his PSA was 13 and that he "probably needed to see a urologist, and he possibly had cancer of the prostate." However, when confronted with his deposition testimony, Bonetzky admitted that he had no recollection as to whether he actually made an appointment with a urologist for Billy. Bonetzky also testified that he sent Billy's medical chart to the Kritzwisers.
 {¶ 36} Faye Kritzwiser testified that she and Billy were both patients of Bonetzky's in 1998 and 1999. Faye testified that she remembered Bonetzky sending both her and Billy to Lima Memorial Hospital for blood work in February of 1998. Faye testified that she did not know Bonetzky was checking Billy's PSA nor did he tell either of them about the PSA result. However, Faye testified that she remembered Bonetzky performing a rectal exam on Billy and advising Billy that his prostate was slightly enlarged. Faye also testified that she and Billy kept *Page 20 
seeing Bonetzky through 1998 until February 1999 and that they began seeing Dr. Mann in May 1999. Faye testified that in March or April of 2000 Dr. Mann checked Billy's PSA and upon seeing the PSA level, referred them to Dr. Hasford who performed a biopsy of Billy's prostate and diagnosed Billy with prostate cancer. Faye also testified that neither she nor Billy suspected any negligence by Bonetzky until September 2005 when her attorney sent her a letter advising that Bonetzky had done a PSA test in 1998 and that it was abnormal. Specifically, Faye testified that receiving that letter was "when Bill and I first learned that he [Billy] had any kind of PSA through Dr. Bonetzky."
 {¶ 37} The Kritzwisers also presented the video deposition testimony of Billy, taken February 3, 2006. Billy testified that Bonetzky was his family doctor in 1998 and that he saw Bonetzky for about a year. Billy testified that he remembered having blood drawn in February 1998 but that he was not aware that his PSA was elevated at that time, nor did Bonetzky tell him that he had high PSA.
 {¶ 38} At the close of Faye's case-in-chief, Bonetzky's counsel moved to dismiss the medical claim portion of the Kritzwisers' complaint because the medical claim was not commenced within one year after the cause of action accrued. Specifically, Bonetzky argued that the statute of limitations should have commenced to run when Billy was diagnosed with prostate cancer in May of 2000 *Page 21 
and therefore, Billy and Faye should have commenced their lawsuit against Bonetzky for the injuries or damages incurred up to Billy's death by May of 2001.
 {¶ 39} In response to Bonetzky's motion to dismiss, counsel for the Kritzwisers argued that the mere fact that Billy was diagnosed with cancer would not have put them on notice that Bonetzky had done anything wrong unless Bonetzky had told them about Billy's February 1998 PSA test. Additionally, the Kritzwisers argued that the evidence presented at trial established that because Billy and Faye were not aware that Bonetzky even tested Billy for PSA (or the subsequent results of the PSA test) until they were informed as such by their attorney via a letter in September of 2005, and because they filed their complaint in October of 2005, their complaint was filed within the applicable statute of limitations.
 {¶ 40} The trial court then determined that it was a legal matter for the court to determine when a cause of action arose for the purposes of the statute of limitations and specifically advised the parties as follows:
 In determining the accrual date in applying the statute of limitations . . . the court should make the following determinations:
 One, when the injured party became aware or should have become aware of the extent and seriousness of his condition. Two, whether the injured party was aware or should have been aware that such condition was related to the specific professional medical service previously rendered to him. *Page 22 And three, whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.
 {¶ 41} In ruling on Bonetzky's motion to dismiss the medical claim portion of the Kritzwisers' complaint, the trial court made the following determination:
 . . . it is my opinion here that when a person goes to a doctor and blood is drawn and they treat with a doctor for a number of months and there's allegedly no referral to any specialist and then they have a falling out with that doctor and they go to another doctor and that doctor draws blood and sends them to a urologist, I think that's — and the urologist takes out the prostate, I think any reasonable person would say, what was the first doctor doing?
 And this should have put them [the Kritzwisers] on notice, that is, the diagnosis of the prostate cancer by Doctor — Doctors Mann and Hasford, which is a cognizable event, and clearly the action wasn't brought within a year of the cognizable event, and the court is going to grant the motion as to the survivorship action. The case will proceed on the wrongful death action.
(See Jury Trial Transcript, Vol. II, August 9, 2007, pp. 191-192).
 {¶ 42} Our review of the record reveals that it is clear that as early as 2000, any reasonable person, including Billy should have been aware of the need to investigate whether improper medical care or treatment was rendered as related to his prostate condition prior to the diagnosis of prostate cancer. Specifically, this would include reason to inquire as to whether a PSA test was part of the blood work ordered in 1998, and if not, why not, and/or whether a PSA test was conducted but abnormal results were simply never reported by the doctor. In sum, *Page 23 
our review of the record demonstrates that because Billy knew he had been treated by Bonetsky for prostate problems, including being told that his prostrate was enlarged, and was aware that blood tests had been conducted in 1998, it was Billy's responsibility to investigate any potential claim against Bonetzky at the time he was diagnosed with prostate cancer in May of 2000, and not wait for over five years to investigate the situation and commence a claim.
 {¶ 43} Based on the foregoing, we find that the trial court did not err when it determined that the "cognizable event" occurred when Billy was diagnosed with cancer in May 2000. Additionally, we find that the trial court did not err when it granted Bonetzky's motion for a directed verdict and dismissed Faye's survivorship claim on statute of limitations grounds. Accordingly, Faye's sole assignment of error is overruled.
 {¶ 44} Therefore, the August 22, 2007 and October 23, 2007 Judgment Entries of the Logan County Court of Common Pleas are affirmed. Additionally, the trial court's order dismissing Faye's survivorship claim, issued as a directed verdict from the bench during the August 8-10, 2007 jury trial is also affirmed.
Judgments affirmed.
 PRESTON, J., concurs. ROGERS, J., concurs separately.
[1] The Ohio Supreme Court has defined an affirmative defense as a new matter which, assuming the complaint to be true, constitutes a defense to it. "An affirmative [defense] (sic) is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim . . . but asserts some legal reason why the plaintiff cannot have any recovery on that claim. . . ." Eurlich, supra at ¶ 15, citingState ex rel. Plain Dealer Publishing Co. v. Cleveland (1996),75 Ohio St.3d 31, 33, 661 N.E.2d 187. The Ohio Supreme Court has also held that "[a]ffirmative defenses other than those listed in Civ. R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings." Id at ¶ 16 citing Jim's Steak House, Inc. v. Cleveland
(1998), 81 Ohio St.3d 18, 21, 688 N.E.2d 506.
[2] R.C. 2307.28 became effective on April 9, 2003. (See S.B. 120). The wrongful death action against Dr. Bonetzky in the present case arose on April 19, 2007, the date Billy died. Therefore, R.C. 2307.28 is applicable and we must use the law effective at the time the cause of action accrued. *Page 24