[Cite as *Adams v. DiSabato*, 2025-Ohio-1219.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

BRET ADAMS,

    PLAINTIFF-APPELLANT,

  v.

MICHAEL DISABATO, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 14-23-45

O P I N I O N

---

Appeal from Union County Common Pleas Court
Trial Court No. 2017-CV-0242

**Judgment Affirmed**

Date of Decision: April 7, 2025

---

APPEARANCES:

    *James P. Connors* **for Appellant**

    *Kyle Phillips* **for Appellee, Michael DiSabato**

    *Brian S. Stewart* **for Appellee, David Rakestraw**

    *John B. Welch* **for Appellee, Vincent Rakestraw**

**ZIMMERMAN, J.**

{**¶1**} Plaintiff-appellant, Bret Adams ("Adams"), appeals the November 29, 2023 judgment entry of the Union County Court of Common Pleas denying his motion for a new trial. For the reasons that follow, we affirm.

{**¶2**} This case stems from an internet post made on a website named "Ripoff Report" stating, among other things, that Adams is "a lying, cheating individual" who

> can't stick to his commitments, he will give you whatever promises he can to get money out of you, and once it's time for him to back his end of the deal up, he will try and lie and cheat his way out, even attempting to make you look like the bad guy.

(Exhibit 58). The post was made on November 10, 2017, with two additional posts of a similar nature made on January 9 and January 19, 2018.

{**¶3**} Defendant-appellee, David Rakestraw ("David"), admitted to making the posts. At the time he made the posts, David was 18 years old and knew that his 77-year-old father, appellee, W. Vincent Rakestraw ("Vincent"), had loaned $348,000 to Adams. David also knew that Adams failed to make any payments on the debt and had sent his father various correspondences that David considered to be "very threatening." (July 18, 2023 Tr. at 82). David was concerned that his father had been "ripped off" by Adams. (*Id.* at 92).

{¶4} When the initial post was made on November 10, 2017, Adams thought that defendant-appellee, Michael DiSabato ("DiSabato"), was responsible because DiSabato had sent "a series of emails" to mutual business associates that, according to Adams, depicted Adams as "a sexist, a racist, um, dating a [p]orn star, [and] practicing law without a license." (*Id.* at 183-184).

{¶5} On December 4, 2017, Adams filed a complaint in the trial court against DiSabato alleging defamation. After the complaint was filed, Adams believed that DiSabato "would stop doing what he was doing and we would move on." (*Id.* at 196). The posts, however, did not stop. Two more posts were made on January 9 and January 19, 2018. On April 18, 2018, Adams filed his first amended complaint alleging that DiSabato made all posts to Ripoff Report.

{¶6} On June 14, 2019, David signed an affidavit averring that he was responsible for making the posts about Adams to Ripoff Report. David further averred that the posts contained true statements about Adams, as well as his personal opinion of Adams. On June 18, 2019, Adams filed David's affidavit in this case.

{¶7} During this same time period, from 2017 to 2019, Adams and David's father, Vincent, an Ohio-licensed attorney, were in a dispute regarding repayment of the funds loaned to Adams. Vincent's real estate management company, Troon Management, Ltd. ("Troon Management"), made a series of loans to Adams that totaled $348,000. When the loans began in 2016, Adams gave a personal guarantee and directed his wife, as Trustee of the Adams Family Trust, to sign a promissory

note secured by a mortgage on farmland owned by the Adams Family Trust in Pickaway County. As the amount of the debt grew—and Adams wanted to continue borrowing more money, the Trustee of the Adams Family Trust executed and delivered a deed transferring the property in Pickaway County to Troon Management as collateral for the entire debt. That deed was signed on May 9, 2017. The parties agreed that, as long as Adams made payments on the debt, the deed would not be recorded. Nonetheless, Adams failed to make any payments so Vincent recorded the deed on July 27, 2017.

{¶8} Adams was "[v]ery unhappy" that Vincent recorded the deed. (July 19, 2023 Tr. at 175). Adams sent emails and text messages to Vincent claiming that the deed was invalid. In one text message, Adams warned that he was about to "unleash my guys" and "[i]f you think you are stealing the farm, you have lost your mind. You will never harm my family without consequences, Vince." (*Id.* at 119; Defendant's Exhibit GG). In another text message, Adams demanded,

> I want the farm back now Vince and if you don't do the right thing the end result [is] going to be the same thing. I will get the farm back and you won't get a dime . . . I will get that deed back one way or another.

(Defendant's Exhibit GG). In yet another text message, Adams stated,

> Vince you will be receiving a letter from the Prosecutors office in Circleville as I filed trespass charges against you and your bomb carrying son. If you he or any agent step foot on the property you will be arrested. I also have hunters staying at the property. They will contact the Sheriff or if they feel threatened they will take the appropriate action to defend themselves. I tried to help you Vince but when you attempt to fuck with my family you are done. Additional

-4-

fraud complaints forthcoming as well as comprehensive bar complaints. Better sell some assets as you are going to be writing me a check. And lose your license to practice to boot. What possessed you to believe you could commit fraud and get away with it I will never understand. Your [sic] just not that smart.

(*Id.*; July 19, 2023 Tr. at 175-177).

{¶9} In response, Troon Management filed a complaint in the Pickaway County Common Pleas Court against the Adams Family Trust to have Troon Management declared the lawful owner of the property. On August 19, 2019, the Pickaway County Common Pleas Court entered summary judgment in favor of Troon Management and declared it the owner of the property. Thereafter, the Adams Family Trust filed a notice of appeal. The parties ultimately entered into a settlement agreement on or about October 4, 2019. Under the settlement agreement, the Adams Family Trust agreed to dismiss its appeal and accept Troon Management's ownership of the property. In return, Troon Management agreed that any outstanding balance owed by Adams or the Adams Family Trust is deemed paid and satisfied. In addition, both parties acknowledged the existence of two liens on the property—a bank mortgage and a mortgage in favor of Kristina Gerig. The parties further acknowledged that the Adams Family Trust was obligated to make payments on the underlying notes secured by the mortgages.

{¶10} Relevant to this case is the mortgage in favor of Gerig. In 2015, Gerig loaned more than $400,000 to Adams. Adams and the Adams Family Trust signed a note promising to pay the debt, and mortgages were recorded on various properties

owned by Adams and the Adams Family Trust—including the property in Pickaway County.

{¶11} On October 23, 2019, a document titled "Assignment of Mortgage" was recorded on the property in Pickaway County. The purported Assignment of Mortgage attempted to assign the Gerig note and mortgage to the Adams Family Trust. On October 30, 2019, Adams sent a letter to Vincent demanding payment under the Gerig note in the amount of $698,488.27. In lieu of payment, Adams stated that he would accept a deed transferring the property in Pickaway County to the Adams Family Trust.

{¶12} As a result of Adams's actions, on November 14, 2019, Troon Management filed a complaint in the Pickaway County Common Pleas Court against Adams and the Adams Family Trust alleging slander of title.[1] It is important to note that, as of late 2019, Adams had not yet named David as a defendant in this case.

{¶13} On April 30, 2020, counsel for Adams sent a letter to Vincent's counsel marked "Confidential Settlement Proposal." (Defendant's Exhibit K). The letter stated that Vincent and David would be added as defendants (in this case) unless Adams received (1) $500,000 to resolve the claims in this case, (2) an

---

[1] Ultimately, the matter proceeded to a bench trial and the Pickaway County Common Pleas Court found in favor of Troon Management on its slander-of-title claim and entered judgment against Adams and the Adams Family Trust, jointly and severally, in the amount of $74,887.48 for compensatory damages, and $2,000 for punitive damages. The trial court's judgment was affirmed on appeal. *See Troon Mgt., Ltd. v. The Adams Family Trust*, 2023-Ohio-3489, ¶ 1 (4th Dist.).

additional $350,000 to resolve a pending malpractice claim Adams filed against Vincent in Franklin County, and (3) a deed transferring the property in Pickaway County to the Adams Family Trust. Moreover, the April 30, 2020 letter stated:

> I am also authorized to submit with respect to David Rakestraw that my client is willing to release David Rakestraw only, not his counsel, under the condition he immediately provides honest and truthful testimony in a deposition or perhaps by affidavit revealing when and how he admitted to writing the posts to Michael Cox, and his attorney Brian Stewart. Of course, this release is conditioned upon the full and complete settlement of all claims against his father Vince Rakestraw, and the further condition that your client Vince Rakestraw also provide the same testimony as is requested from his son David Rakestraw.
>
> If we do not resolve and settle these matters by May 5, 2020, at 12:00 p.m., consistent with the above terms, my client has directed . . . that we immediately begin preparation and filing of the Third Amended Complaint.

(*Id.*).

{¶14} The foregoing proposal was not acceptable to Vincent, David, and Troon Management. So, on May 22, 2020, Adams filed a third amended complaint to add Vincent and David as defendants in this case. The third amended complaint alleged, among other things, that Vincent, David, and DiSabato "formed a civil conspiracy" to disparage, slander, and defame Adams, and place him in a false light.

{¶15} On August 25, 2020, David filed an answer and counterclaim. In his counterclaim, David alleged abuse of process regarding Adams's misuse of this case to obtain a deed transferring the property in Pickaway County to the Adams Family Trust.

{¶16} On November 19, 2020, Vincent filed a motion for judgment on the pleadings, which the trial court granted on January 13, 2021. After the trial court granted Vincent's motion, only DiSabato and David remained as defendants in this case. David's abuse-of-process counterclaim also remained pending in this case.

{¶17} On February 1, 2021, Adams filed a motion for summary judgment against DiSabato based on his failure to respond to discovery requests. On May 7, 2021, the trial court granted Adams's motion, in part, and entered judgment in favor of Adams and against DiSabato as to liability for defamation. The trial court further ordered that the issue of damages would be determined by the jury at trial.

{¶18} A jury trial was held in September 2022 that ended in a mistrial due to a sleeping juror and the lack of available alternates. In its September 9, 2022 entry declaring a mistrial, the trial court entered a directed verdict in favor of David on all of Adams's claims except for defamation and false light.

{¶19} This case then proceeded to a five-day jury trial on July 17-21, 2023. On July 21, 2023, the jury returned a verdict for DiSabato on Adams's claim for false light. As to the issue of damages on Adams's defamation claim against DiSabato, the jury awarded damages of $1. The jury further returned verdicts for David on Adams's claims for defamation and false light. On David's abuse-of-process counterclaim against Adams, the jury returned a verdict for David and awarded compensatory damages of $110,000. Following an instruction on punitive damages and attorney fees, the jury unanimously awarded David punitive damages

in the amount of $25,000, and further decided that Adams is liable for David's reasonable attorney fees.

**{¶20}** On September 5, 2023, Adams filed a motion for a new trial, which the trial court denied on November 29, 2023. Adams filed a notice of appeal on December 29, 2023. He raises eight assignments of assignment of error for our review.

**{¶21}** For ease of our discussion, we will address Adams's assignments of error out of order.

### Second Assignment of Error

**The Trial Court Erred by Denying Bifurcation of the Separate and Disparate Claims and Separate Trials Against the Remaining Defendants.**

**{¶22}** In his second assignment of error, Adams argues that the trial court erred by not conducting two separate trials under Civ.R. 42(B). Adams contends that the claims against DiSabato "had nothing to do with the posts" made to Ripoff Report such that the trial court erred by not ordering separate trials. (Appellant's Brief at 8).

*Standard of Review*

**{¶23}** "Civ.R. 42(B) provides that a trial court may order separate trials of separate issues whenever it will further convenience and judicial economy and avoid prejudice." *Sheets v. Norfolk S. Corp.*, 109 Ohio App.3d 278, 288 (3d Dist. 1996). Civ.R. 42(B) reads,

> For convenience, to avoid prejudice, or to expedite or economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims. When ordering a separate trial, the court shall preserve any right to a jury trial.

**{¶24}** "'The decision of whether or not to bifurcate the proceedings . . . is a matter within the sound discretion of the trial court.'" *Precision Strip, Inc. v. Dircksen*, 2020-Ohio-6668, ¶ 44 (3d Dist.), quoting *Sheets*, 109 Ohio App.3d at 288. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶25}** On June 1, 2023, Adams filed a motion in the trial court requesting that the issue of damages against DiSabato be decided at a bench trial. Adams's motion further requested that "[o]nce the claims against DiSabato are finally concluded in this manner, a separate jury or bench trial could be held as to [David]." (Doc. No. 631).

**{¶26}** A hearing on the matter was held on July 10, 2023. At the hearing, Adams argued that the issue of damages against DiSabato should be bifurcated from the claims against David to avoid jury confusion and prejudice to Adams. Adams represented that he would be willing to dismiss his remaining claim of false light against DiSabato so that the issue of damages could proceed separately to a bench trial.

**{¶27}** In contrast, DiSabato and David argued that bifurcation was not warranted because Adams's third amended complaint alleges, among other things, that DiSabato and David acted together to defame Adams and place him in a false light. Thus, any resulting confusion was created by Adams. DiSabato and David further argued that this case had been pending for six years and convenience and judicial economy necessitated that all claims be tried in one trial to the jury.

**{¶28}** After considering the parties' arguments, the trial court denied Adams's motion. The trial court noted that, even if it bifurcated the claims and ordered separate trials, Civ.R. 42(B) preserved the right to a jury trial. The trial court further noted that, in order for the jury to determine the amount of damages against DiSabato, both Adams and DiSabato would need to present their respective case to the jury to explain why DiSabato was found liable on Adams's claim for defamation.

**{¶29}** Based on our review of the record, we conclude that the trial court did not abuse its discretion by conducting one jury trial in this case. The trial court properly considered the convenience of the parties and judicial economy, as well as the need to preserve DiSabato's right to a jury trial. *See Sheets*, 109 Ohio App.3d at 288 ("absent an abuse of discretion, this court will not interfere with the trial court's ruling on the issue of bifurcation"). Thus, the trial court's decision was neither unreasonable, arbitrary, nor unconscionable.

{¶30} Accordingly, Adams's second assignment of error is overruled.

**Fifth Assignment of Error**

**The Trial Court Improperly Reversed a Prior Order Not Allowing New Evidence for Defendants after Enforcing the Order Against Plaintiff.**

{¶31} In his fifth assignment of error, Adams argues that the trial court erred by admitting the amended operating agreement for Troon Management to show that David is an owner of the company.

*Standard of Review*

{¶32} "An appellate court reviews decisions involving the admissibility of evidence for an abuse of discretion." *Columbia Gas v. Bailey*, 2023-Ohio-1245, ¶ 108 (3d Dist.), citing *Estate of Johnson v. Randall Smith, Inc.*, 2013-Ohio-1507, ¶ 22. An abuse of discretion connotes that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶33} During opening statements, Adams addressed David's abuse-of-process counterclaim and how it relates to the property in Pickaway County owned by Troon Management. Adams told the jury that David "did not own the claim" and that "there was no basis for [David] to make a personal claim on behalf of Troon Management. His dad owned the company. David did not own the company or any interest in the company." (July 17, 2023 Tr. at 90-91).

{¶34} Following opening statements, Adams presented his case and called Vincent to testify as his first witness. Vincent died on March 19, 2022, at the age of 81. Prior to his death, Vincent was deposed by Adams on December 4, 2019. At trial, excerpts from Vincent's deposition testimony were read into the record. With respect to Troon Management, Vincent was asked to explain the company. Vincent responded, "Troon Management is a[n] LLC formed in 1973 which I own that is designated to acquire, manage and sell real estate." (July 18, 2023 Tr. at 62). Vincent was further asked if he is the only member of Troon Management, Vincent answered, "Yes." (*Id.* at 63).

{¶35} Adams then called David to testify on cross-examination. David was asked if he is the owner of Troon Management, to which David responded affirmatively. As to the property in Pickaway County, David was asked, "And now, as part of a settlement of the litigation in Pickaway County brought by Troon Management, you are now the owner of that farm. Correct?" (*Id.* at 87). David responded, "Troon Management currently owns the farm." (*Id.*). David testified that he became an owner of Troon Management on December 10, 2018. When asked if he disputed his father's deposition testimony of December 4, 2019 stating that he was the sole owner of Troon Management, David responded, "I believe he misspoke." (*Id.* at 126).

{¶36} Adams testified on direct examination that he had a conversation with David in September of 2022 wherein David stated "they never executed the Troon

Operating Agreement." (July 18, 2023 Tr. at 216). Adams further testified that David told him that he was not an owner of Troon Management.

**{¶37}** When David presented his case on the abuse-of-process counterclaim, he denied ever telling Adams that he was not an owner of Troon Management. David testified that he and his father signed the amended operating agreement for Troon Management on December 10, 2018. Adams objected to the admission of the document on the basis that "it was agreed prior to trial by the Court and the parties that no exhibits would be utilized at or during the trial that were not previously used." (July 20, 2023 Tr. at 153). The trial court overruled Adams's objection and noted that the issue of ownership of Troon Management had been brought up by Adams.

**{¶38}** Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting the amended operating agreement for Troon Management. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Here, Adams disputed David's ownership of Troon Management and his ability to bring an abuse-of-process counterclaim relating to the property in Pickaway County. Since the amended operating agreement addressed the issue of David's ownership interest in the company, it was relevant evidence such that the trial court's decision to admit the document was neither unreasonable, arbitrary, nor unconscionable.

**{¶39}** Therefore, Adams's fifth assignment of error is overruled.

**Third Assignment of Error**

**The Trial Court Committed Reversible Error by Admitting a Prohibited, Privileged, Confidential Private Settlement Communication at Trial.**

**{¶40}** In his third assignment of error, Adams argues that the trial court erred by admitting the April 30, 2020 letter sent by his counsel to Vincent's counsel because the letter is a settlement communication and inadmissible under Evid.R. 408.

*Standard of Review*

**{¶41}** As set forth above, an appellate court reviews decisions involving the admissibility of evidence for an abuse of discretion. *Bailey*, 2023-Ohio-1245, at ¶ 108 (3d Dist.). Again, an abuse of discretion means that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶42}** "Evid.R. 408 prohibits introduction of evidence regarding settlement or compromise that is offered 'to prove liability for or invalidity of the claim or its amount.'" *Toledo v. Bernard Ross Family Ltd. Partnership*, 2006-Ohio-117, ¶ 64 (6th Dist.), quoting Evid.R. 408. However, "Evid.R. 408 does not bar information from settlement negotiations when it is *offered for another purpose* and not to prove liability against one of the parties to the negotiations." (Emphasis added.) *USCA/USA v. High-Tech Packaging, Inc.*, 2006-Ohio-6195, ¶ 34 (6th Dist.).

**{¶43}** In its entirety, Evid.R. 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose*, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added.)

**{¶44}** On appeal, Adams argues that the trial court erred by admitting the April 30, 2020 letter because it is a "confidential privileged inadmissible settlement communication" under Evid.R. 408. (Appellant's Brief at 12). Adams further argues that "[t]here is no mistaking the sole purpose of the letter was to engage in a private confidential global settlement involving multiple claims with multiple parties." (Appellant's Reply Brief at 9).

**{¶45}** David counters that the trial court did not abuse its discretion by admitting the April 30, 2020 letter because it was "offered for another purpose" under Evid.R. 408. David argues that the letter threatened to add him as a defendant in this case unless Adams received, among other things, a deed transferring the property in Pickaway County to the Adams Family Trust. Thus, the letter was offered to establish David's abuse-of-process counterclaim against Adams.

**{¶46}** To establish a claim of abuse of process, the following three elements must be satisfied: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994), paragraph one of the syllabus. With respect to the second element, "'[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.'" *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271 (1996), quoting Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, § 121, at 898 (5th Ed. 1984).

**{¶47}** Here, we conclude that the trial court did not abuse its discretion by admitting the April 30, 2020 letter. The letter was not offered for the purpose of establishing liability or the value of any claim discussed therein. Instead, the letter was offered to show Adams's abuse of process by using this case as a means to obtain a deed to the property in Pickaway County. Importantly, the property in Pickaway County was not part of the proceeding before the trial court, nor did the trial court have power to order transfer of the property. *See Robb*, 75 Ohio St.3d at 271. ("abuse of process occurs where someone attempts to achieve through use of

-17-

the court that which the court is itself powerless to order"). Accordingly, the letter falls outside the scope of Evid.R. 408.

{¶48} Therefore, Adams's third assignment of error is overruled.

**Seventh Assignment of Error**

**The Trial Court Erred by Denying Appellant's Motion for a New Trial Pursuant to Civ.R. 59(A)(1, 2, 3, 8, and 9).**

{¶49} In his seventh assignment of error, Adams argues that the trial court erred by denying his Civ.R. 59(A) motion for a new trial. In particular, Adams argues that the trial court prevented him from having a fair trial by admitting the amended operating agreement for Troon Management and the April 30, 2020 letter.

*Standard of Review*

{¶50} Civ.R. 59(A) provides several grounds for which a trial court may grant a new trial, including "[i]rregularity in the proceedings of the court . . . by which an aggrieved party was prevented from having a fair trial." Civ.R. 59(A)(1).

{¶51} "The decision as to whether or not to grant a motion for a new trial is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Striff v. Luke Md. Practitioners, Inc.*, 2010-Ohio-6261, ¶ 70 (3d Dist.). An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶52}** We have already determined that the trial court did not abuse its discretion by admitting the amended operating agreement for Troon Management (as discussed in the fifth assignment of error) and the April 30, 2020 letter (as addressed in the third assignment of error). Our further review of the record reveals no "[i]rregularity in the proceedings" that prevented Adams's from having a fair trial. Civ.R. 59(A)(1). Therefore, we conclude that the trial court did not abuse its discretion by denying Adams's motion for a new trial.

**{¶53}** Accordingly, Adams seventh assignment of error is overruled.

**Fourth Assignment of Error**

**The Trial Court Committed Reversible Error by Repeatedly Allowing Highly Prejudicial, Non-Probative Hearsay and Other Irrelevant Evidence.**

**{¶54}** In his fourth assignment of error, Adams argues that the trial court erred by admitting a "list of cases" prepared by David and various "published news stories or newspaper articles" that improperly portrayed Adams as a "bad guy." (Appellant's Brief at 16-17).

*Standard of Review*

**{¶55}** We review a decision on the admissibility of evidence under an abuse-of-discretion standard. *Bailey*, 2023-Ohio-1245, at ¶ 108 (3d Dist.). An abuse of discretion means that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

-19-

**{¶56}** "However, even if a trial court abuses its discretion in the admission of evidence, 'a reviewing court will not reverse unless the error affected a substantial right of the party at issue.'" *Universal Steel Bldgs. Corp. v. Dues*, 2024-Ohio-698, ¶ 161 (3d Dist.), quoting *Coffey v. Dolgencorp, Inc.*, 2007-Ohio-2274, ¶ 26 (3d Dist.). If a substantial right of a party is not affected, then the error is harmless. Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

*Analysis*

**{¶57}** In Ohio, to establish defamation, a plaintiff must show

> (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement.

*Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist. 1996). Moreover, defamation is defined generally as the publication of a false statement,

> "'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'"

*Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77-78, quoting *Jackson v. Columbus*, 2008-Ohio-1041, ¶ 9, quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995).

{¶58} In this case, Adams sued David for defamation based on three posts made to Ripoff Report. David testified that he believed the posts contained true statements about Adams. In particular, David testified that, prior to making the posts to Ripoff Report, he conducted an online search of Adams and found "his vast court records." (July 18, 2023 Tr. at 89). David explained that he accessed the public records of court websites and found cases where creditors had sued Adams for fraud, abuse of process, and unjust enrichment. After conducting his online research, David decided to post to Ripoff Report and reference some the cases he found in his posts.

{¶59} David offered into evidence a list of 55 civil cases involving Adams. David compiled the list of cases in June of 2020, shortly after Adams filed a third amended complaint adding David as a defendant in this case. Adams objected to the admission of the list of cases as not being relevant. In response, David argued that the list of cases represents the online research he conducted prior to making the posts to Ripoff Report. The trial court overruled Adams's objection and the list of cases was admitted.

{¶60} Based on our review of the record, we conclude that the trial court did not abuse its discretion by admitting the list of cases. Here, the list is relevant to show what information David relied on when making the posts to Ripoff Report. Evid.R. 401. Since publication of the alleged defamatory statements must be made with some degree of fault on the part of the defendant, the trial court's decision to

admit the list of cases was neither unreasonable, arbitrary, nor unconscionable. *See Am. Chem. Soc.*, 2012-Ohio-4193, at ¶ 77-78.

**{¶61}** Moreover, even if the trial court did abuse its discretion by admitting the list of cases, any such error is harmless because Adams has not demonstrated the admission of the list affected his substantial rights. *See Universal Steel Bldgs. Corp.*, 2024-Ohio-698, at ¶ 161 (3d Dist.); Civ.R. 61. Instead, the record reveals that Adams testified that he has been involved in "thousands" of cases during his career as a lawyer and businessman. (July 19, 2023 Tr. at 238). As to the 55 civil cases on the list, Adams testified that "some of them are very old and some of those were significant wins for me." (*Id.*). Absent a showing of material prejudice on the part of Adams, we conclude that any error in admitting the list of cases is harmless.

**{¶62}** Similarly, Adams argues that the trial court erred by admitting various news articles and internet postings, but fails to show how their admission affected his substantial rights. *See Universal Steel Bldgs. Corp.*, 2024-Ohio-698, at ¶ 161; Civ.R. 61. A review of the record demonstrates that the news articles and internet postings were offered as evidence of Adams's reputation in the business and legal community before and after publication of the alleged defamatory statements. Evid.R. 401. Since Adams asserted he suffered injury to his reputation as a proximate result of the publication, the trial court's decision to admit this evidence was neither unreasonable, arbitrary, nor unconscionable. *See Pollock v. Rashid*, 117 Ohio App.3d at 368 (1st Dist. 1996).

**{¶63}** Therefore, Adams's fourth assignment of error is overruled.

**Sixth Assignment of Error**

**The Trial Court Erred by Excluding Key Witness Union County Sheriff Detective Golden from Testifying at Trial.**

**{¶64}** In his sixth assignment of error, Adams argues that the trial court erred by excluding Detective Golden from testifying at trial. Adams contends that Detective Golden would have testified to "his criminal investigation" into who made the posts to Ripoff Reports. (Appellant's Brief at 21). Specifically, Detective Golden would have testified to "a recorded interview and discussion" wherein Vincent and David "admit to participating in the [Ripoff Report] posts and anonymously posting them, and in conspiring to hide their roles and identities from Mr. Adams." (*Id.*).

*Standard of Review*

**{¶65}** As previously stated, a trial court has broad discretion to determine whether to admit or exclude evidence, and we will not disturb that decision unless the trial court abused its discretion. *Bailey*, 2023-Ohio-1245, at ¶ 108 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶66}** As an initial matter, we note that Adams mischaracterizes the proffered evidence. First, Detective Golden did not conduct a "recorded interview

and discussion." (Appellant's Brief at 21). Instead, the proffered evidence is an audio recording surreptitiously made by Detective Golden, without a warrant, on December 5, 2018, of a telephone conversation between Vincent and David that took place in Vincent's law office—with David on speaker phone. Detective Golden made the audio recording while waiting in the lobby area of Vincent's law office. Second, at no point during their telephone conversation do Vincent and David "admit to participating in the [Ripoff Report] posts" or "in conspiring to hide their roles and identities from Mr. Adams." (*Id.*).

**{¶67}** At trial, following Adams's proffer of evidence and arguments from counsel, the trial court excluded Detective Golden from testifying and further precluded the jury from hearing the audio recording. The trial court noted that Detective Golden did not participate in the conversation between Vincent and David, nor was his testimony needed to identify the author of the posts since David admitted to making the posts. *See* Evid.R. 402 (providing that irrelevant evidence is inadmissible). The trial court also noted that Adams could testify to the efforts he made to discover who made the posts to Ripoff Report. *See* Evid.R. 602 (stating that a witness must have personal knowledge of the matter to which he testifies).

**{¶68}** Based on our review of the record, we conclude that the trial court did not abuse its discretion by excluding Detective Golden from testifying at trial.

**{¶69}** Thus, Adams's sixth assignment of error is overruled.

**First Assignment of Error**

**The Trial Court Erred as a Matter of Law by Granting Defendant Vincent Rakestraw's Motion for Judgment on Pleadings.**

{¶70} In his first assignment of error, Adams argues that the trial court erred by dismissing his claims against Vincent because the third amended complaint "more than adequately pled his claim[s] to survive" a motion under Civ.R. 12(C). (Appellant's Brief at 8). Adams requests that we reverse the trial court's decision and "remand for further proceedings and trial on these claims against Vincent." (*Id.*).

*Standard of Review*

{¶71} "'An appellate court reviews a trial court's decision on a Civ.R. 12(C) motion for judgment on the pleadings de novo and considers all legal issues without deference to the trial court's decision.'" *Jones v. Gilbert*, 2023-Ohio-754, ¶ 11 (3d Dist.), quoting *Wentworth v. Coldwater*, 2015-Ohio-1424, ¶ 15 (3d Dist.).

*Analysis*

{¶72} In this case, the trial court granted Vincent's motion for judgment on the pleadings on January 13, 2021. Subsequent to the dismissal of Adams's claims against him, Vincent died on March 19, 2022. Ohio's abatement-by-death statute, R.C. 2311.21, states as follows:

> Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, *except actions for libel, slander*, malicious prosecution, for a

> nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party.

(Emphasis added.) Therefore, since "actions for libel, slander" do not survive the death of either party, Adams's potential claims for defamation against Vincent abated by his death. *Village of Oakwood v. Makar*, 11 Ohio App.3d 46, 47 (8th Dist. 1983).

{¶73} A review of the third amended complaint reveals that all of the potential claims against Vincent involve alleged defamatory statements and a "civil conspiracy" regarding the publication of those statements. A civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Hawk v. Am. Elec. Power Co.*, 2004-Ohio-3549, ¶ 32 (3d Dist.), quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995). "However, if all of the substantive claims underlying the conspiracy are without merit, the conspiracy claim must also fail." *Hawk*, 2004-Ohio-3549, at ¶ 32.

{¶74} Here, Adams did not prevail on his claims for defamation and false light at trial. Thus, Adams's potential claim for civil conspiracy against Vincent must also fail. *Id.*

{¶75} Therefore, Adams's first assignment of error is overruled.

**Eighth Assignment of Error**

**The Trial Court Erred by Granting Attorney Fees.**

**{¶76}** In his eighth assignment of error, Adams argues that "[t]he jury awarded $110,000 as damages" to David that "included $60,000 for attorney fees." (Appellant's Brief at 25). Adams contends that "it was error for the [trial] court to then grant an additional attorney fee award on top of what the jury's award already included attorney fees." (*Id.*).

*Standard of Review*

**{¶77}** "[W]e review a trial court's determination regarding attorney fees for an abuse of discretion." *Universal Steel Bldgs. Corp.*, 2024-Ohio-698, at ¶ 194 (3d Dist.), citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). As previously stated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶78}** In this case, the jury unanimously returned a verdict in favor of David on his abuse-of-process counterclaim and awarded compensatory damages of $110,000. After the jury awarded compensatory damages, the trial court then instructed the jury that they would need to determine whether punitive damages were warranted and whether Adams is liable for David's reasonable attorney fees. The trial court further instructed the jury that "[i]f you decide that Plaintiff [Adams] is liable for attorney fees, *the Court will determine the amount*." (Emphasis added.) (July 21, 2023 Tr. at 267). Importantly, Adams did not object to the trial court's instruction, nor did he object to the verdict form that stated, "We, the Jury, find

attorney fees, a blank line, should or should not be awarded against the Plaintiff."
(*Id.* at 268).

**{¶79}** Following deliberations, the jury unanimously found that David is entitled to an award of punitive damages in the amount of $25,000, and that attorney fees should be awarded against Adams. Thereafter, on October 20, 2023, the trial court held a hearing to determine the amount of attorney fees. Ultimately, the trial court ordered Adams to pay attorney fees in the amount of $75,195.56.

**{¶80}** On appeal, Adams argues that it was error for the trial court to include an award of attorney fees in the jury instruction on punitive damages since the award of compensatory damages "included $60,000 for attorney fees." (Appellant's Brief at 25). However, Adams failed to argue this issue before the trial court. Thus, Adams has waived all but plain error regarding the award of attorney fees. *Shanklin v. Lowman*, 2011-Ohio-255, ¶ 40 (3d Dist.).

**{¶81}** Plain errors are obvious, prejudicial, and would otherwise undermine public confidence in judicial proceedings if allowed to stand. *Shanklin*, 2011-Ohio-255, at ¶ 41. Moreover, the plain error doctrine is not favored in civil appeals and

> "'may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'"

*Id.*, quoting *Kristzwiser v. Bonetzky*, 2008-Ohio-4952, ¶ 20 (3d Dist.), quoting *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus.

-28-

**{¶82}** Here, in reviewing the matter for plain error, we conclude that the trial court did not err by ordering Adams to pay attorney fees of $75,195.56. The trial court did not "grant" an "additional attorney fees award." (Appellant's Brief at 25). Rather, the trial court, after a hearing on the matter, properly determined the *amount* of reasonable attorney fees to be paid by Adams. Thus, there is no plain error.

**{¶83}** Accordingly, Adams's eighth assignment of error is overruled.

**{¶84}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued in his assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and MILLER, J., concur.**

**/hls**